986 So.2d 1060 (2008)
Kathryn C. KLINK, Appellant,
v.
Marc V. BREWSTER, Appellee.
No. 2006-CA-01827-COA.
Court of Appeals of Mississippi.
June 24, 2008.
*1061 Leslie B. Shumake, attorney for appellant.
James W. Amos, Malenda Harris Meacham, Hernando, attorneys for appellee.
Before MYERS, P.J., IRVING, GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Kathryn C. Klink ("Katie") appeals the chancellor's award of child custody to Marc V. Brewster ("Marc"). Katie argues that the chancellor erred by: (1) excluding all of Katie's witnesses, (2) not giving sufficient weight to the age of the minor child, (3) giving undue weight to the sex of the child, (4) finding that Marc has better parenting skills, (5) finding that the employment responsibilities favor Marc, (6) finding that the moral fitness factor favors Marc, and (7) separating the minor child from his three older sisters.

FACTS
¶ 2. While dating, Katie and Marc had a child, Jonathan, out of wedlock on January 15, 2005. Both parents filed for sole physical custody of Jonathan.[1] When the custody hearing was held on August 23, 2006, Jonathan was approximately twenty-months old. Before the chancellor heard testimony regarding custody, he heard Marc's motion to exclude witnesses because Katie violated an order regarding discovery. The chancellor granted this motion and then heard evidence regarding custody.
¶ 3. At the time of the hearing, Marc was married to Crystal Brewster. They had been married for over a year. Marc had two children, Jonathan and Braden. Braden's mother is Crystal. Marc lived in a three-bedroom townhouse with Crystal *1062 and Braden.[2] Marc had held the same job for five years. His work schedule was from 7:45 a.m. to 4:15 p.m., five to six days a week. Both Marc and Crystal took care of Jonathan when he was at their home, but Marc provided the majority of the caregiving.
¶ 4. Katie married Chris Burris seven days before the hearing. Katie had lived in the same rental house for three years. Besides Jonathan, Katie had three daughters. Each of Katie's four children have different fathers. Katie's three daughters live with her. Katie's only source of employment was cleaning family members' and friends' homes for money at least ten hours a week. She had recently discontinued her government assistance. Three other adults lived in her house since Marc had moved out. These roommates had used cocaine and marijuana in the house.
¶ 5. Katie testified that she normally got up at 5:30 a.m. to get her two oldest daughters, age seven and the other age five, ready for school. She stated that she takes the two youngest, a three-year-old daughter and Jonathan, with her to clean houses. She cleans these houses until school ends for the day at 2:30 p.m. She bathes the children and prepares meals for them at night. She and the children regularly attend church. Katie admitted that she knew that some of the individuals, who lived in her house, used drugs. She also admitted that she would occasionally drink at her house. Katie also admitted that Jonathan ingested lighter fluid when he was in her care, which resulted in her taking him to the doctor.
¶ 6. Marc called his friend Christopher White to testify. Christopher testified that he had seen drugs in Katie's house when the children were present. Christopher also testified that Katie had gotten drunk in front of the children a few times. He believed that Marc was the better parent.
¶ 7. Crystal also testified. She stated that Marc cleans, bathes, and plays with Jonathan. She testified that she takes care of Jonathan when Marc is at work. Crystal also stated that Katie is often asleep when she drops Jonathan off at Katie's house. She said that Katie's children are often unsupervised. She said that Katie's house was often dirty with cat feces throughout Katie's house. She also testified that Katie forgot to take Jonathan to get his four-month shot, and she often forgets to give Jonathan his medicine. She stated that Jonathan was often dirty, unkept, and had diaper rash when she and Marc got him for visitation. Jonathan's appearance was corroborated by Crystal's mother, Vicki Howard, and Marc.
¶ 8. Marc's twin brother, Eric, also had lived with Katie. He testified that he smoked marijuana and used cocaine when he lived in Katie's house. He also testified that Katie would have a few drinks in front of the children. He also alleged that he had sex with Katie when he lived in her house, but Katie denied this allegation.
¶ 9. At the end of the trial, the chancellor dictated his ruling into the record. He analyzed and balanced the Albright factors. He found that the following factors weighed in Marc's favor: the child's sex, the parenting skills, the parents' employment responsibilities, the parents' employment stability, the health of child, the parents' moral fitness, and the stability of home environment factors. He found that the tender years and the continuity of care favored Katie. The chancellor found that *1063 the home, school, and community record; health of the parent; willingness to provide primary care; and emotional ties factors favored neither parent. After balancing the factors, the chancellor awarded sole physical custody of Jonathan to Marc. Further facts will be presented as needed.

ANALYSIS

I. Custody Determination

A. Standard of Review
¶ 10. "In domestic relations cases, the [appellate court's] scope of review is limited by the substantial evidence/manifest error rule." Samples v. Davis, 904 So.2d 1061, 1063-64(¶ 9) (Miss. 2004) (citing Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002)). "[We] will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Id. (quoting Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996)). "However, where the chancellor improperly considers and applies the Albright factors, an appellate court is obliged to find the chancellor in error." Hollon v. Hollon, 784 So.2d 943, 946(¶ 11) (Miss.2001) (citing Jerome v. Jerome, 689 So.2d 755, 757 (Miss.1997)).

B. Albright Factors
¶ 11. "[T]he polestar consideration in child custody cases is the best interest and welfare of the child." Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The supreme court has enumerated several factors to help chancellors determine what is in the "best interest" of the child in a custody dispute. Id. These factors include:
The age of the child . . . should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Id. at 1005. These factors are not to be treated as "the equivalent of a mathematical formula." Lee v. Lee, 798 So.2d 1284, 1288(¶ 15) (Miss.2001). Katie challenges the chancellor's determination on many but not all of these factors. Therefore, we will address only those factors that Katie has challenged on appeal.
¶ 12. First, Katie argues that the chancellor did not give sufficient weight to the fact that Jonathan is of tender years. The supreme court has reiterated that "the age and sex of a child are merely factors to be considered under Albright, and this Court has significantly weakened the once strong presumption that a mother is generally best suited to raise a young child." Id. at 1289(¶ 17). In this case, the chancellor followed the mandate of Lee and merely weighed the age of the child as he would any other Albright factor. In fact, he weighed this factor in favor of Katie. Therefore, we cannot say that the chancellor committed manifest error in determining that Jonathan's age favored Katie.
¶ 13. Second, Katie asserts that the chancellor gave undue weight to the sex of *1064 the child. She argues that this factor is of little importance because Jonathan is an infant and not a teenager, who needs a male role model. Albright clearly lists that the sex of the child may be considered by a chancellor when awarding custody. We cannot find any manifest error in the chancellor's determination on this issue.
¶ 14. Third, Katie argues that the chancellor erred by finding that Marc is the parent with the better parenting skills. The record reveals that Marc routinely takes Jonathan to the doctor, that he bathes Jonathan, and that he plays with him. The record also reveals that Katie often forgot to give Jonathan his medicine, that Jonathan often had diaper rash while he was in her care, and that Jonathan ingested lighter fluid while in her care. We believe that the chancellor's ruling on this factor was supported by substantial evidence.
¶ 15. Fourth, Katie argues that the chancellor erred by finding that the employment responsibilities favored Marc. Marc has held the same job for five years. Marc testified that he works approximately five days a week from 7:45 a.m. until 4:15 p.m. Katie testified that she works ten hours a week cleaning the houses of family and friends. Katie argues that the flexibility of her work schedule and the fact that she can take her children with her to work mean that this factor should weigh in her favor. We, however, find that the chancellor based his determination on the stability of Marc's daily routine. Therefore, we believe that the chancellor's determination of this factor is supported by substantial evidence.
¶ 16. Fifth, Katie contends that the chancellor committed reversible error by determining that the moral fitness of the parties favored Marc. The evidence shows that Katie sometimes drank alcohol in front of her children. Also, she allowed individuals whom she knew used drugs to live in her house. Also, Katie has four children by four different fathers. We find that there was sufficient evidence to support the chancellor's findings regarding this factor.
¶ 17. After examining the Albright factors, we find that the chancellor's determination that sole physical custody of Jonathan should be granted to Marc is supported by substantial evidence.

II. Separating Siblings
¶ 18. Katie argues that the chancellor erred by separating Jonathan from his three half sisters. If the chancellor had granted custody to Katie, Jonathan would have been separated from his half brother, Braden. The Mississippi Supreme Court has stated, "that in the absence of some unusual and compelling circumstance dictating otherwise, it is not in the best interest of children to be separated." Sellers v. Sellers, 638 So.2d 481, 484 (Miss. 1994). We believe the complex nature of Jonathan's family tree represents the kind of unusual and compelling circumstance envisioned in Sellers. Therefore, we find that the chancellor did not err by separating Jonathan from his three half sisters.

III. Exclusion of Witnesses
¶ 19. On July 18, 2006, the chancellor entered an order of continuance in this case because discovery had not been answered. This order required that all written discovery be answered by no later than July 21, 2006. On July 31, 2006, Marc filed a petition for contempt and a motion to exclude Katie's discovery responses. The chancellor granted both the motion and the petition. He also ruled that all of Katie's witnesses were excluded from testifying in this case because Marc *1065 requested their identities during discovery. Katie was the only witness allowed to testify for her side.
¶ 20. Katie argues that the chancellor erred when he excluded all of her witnesses because this was against the "best interest of the child." Mississippi Rule of Civil Procedure 37(d)(2) and (3) states:
If a party . . . fails . . . (2) to serve answers or objections to interrogatories submitted under Rule 33 . . . or (3) to serve a written response to a request for inspection submitted under Rule 34 . . . the court in which the action is pending on [the] motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsection (A), (B), and (C) of subsection (b)(2) of this rule.
¶ 21. Rule 37 also states, "the court . . . may . . . [enter] an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence. . . ." M.R.C.P. 37(b)(2)(B). Katie did not respond to Marc's discovery request until two days before trial. The Mississippi Rules of Civil Procedure were promulgated to avoid such actions. The Mississippi Supreme Court has stated:
We have long been committed to the proposition that trial by ambush should be abolished, the experienced lawyer's nostalgia to the contrary notwithstanding. We have sought procedural justice through a set of rules designed to assure to the maximum extent practicable that cases are decided on their merits, not the fact that one party calls a surprise witness and catches the other with his pants down. One of the most obviously desirable and rigidly enforced of these rules is that requiring pre-trial disclosure of witnesses.
Harris v. Gen. Host Corp., 503 So.2d 795, 796-97 (Miss.1986).
¶ 22. We find that the chancellor was merely enforcing the mandates of Mississippi Rule of Civil Procedure 37. Therefore, this issue is without merit.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.
NOTES
[1] Katie petitioned for custody on May 20, 2005, and Marc counter-petitioned for custody on August 11, 2005.
[2] Prior to the custody determination, Katie had temporary custody, and Marc had visitation. Jonathan spent a significant amount of time in both households prior to the chancellor's determination.