MYERS, J.,
for the Court:
¶ 1. Cliff and Charity Jackson were married in 1998. The marriage produced two daughters, Anna Grace and Molly Elizabeth. At the time of trial, the children were seven and five years of age, respectively. The parties agreed to an irreconcilable differences divorce but left the issue of child custody to the chancery court. Both parents sought physical custody of the children, but each also asked the court to consider joint custody in the alternative. After a trial, the chancellor awarded joint custody, with physical custody to alternate between the parents at two-week intervals. Cliff appeals from that judgment, contending that the chancellor erred in his analysis of the familiar Albright factors.
STANDARD OF REVIEW
¶ 2. “A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Sanderson v. Sanderson, 824 So.2d 628, 625-26 (¶ 8) (Miss.2002) (citations omitted). Furthermore, we “will affirm the [child-custody] decree if the record shows any ground upon which the decision may be justified.... We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interest! ] of the child.” Mosley v. Mosley, 784 So.2d 901, 905-06 (¶ 15) (Miss.2001) (quoting Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).
DISCUSSION
¶ 3. “[T]he polestar consideration in child custody cases is the best interest and welfare of the child.” Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). To that end, chancellors must consider the following factors when evaluating the fitness of each parent: (1) age, health, and sex of the children; (2) continuity of care; (3) parenting skills and the willingness and capacity to provide primary child care; (4) the employment responsibilities of the parents; (5) the physical and mental health and age of the parents; (6) the moral fitness of the parents; (7) the emotional ties of the parents and children; (8) the home, school, and community records of the children; (9) the preference of a child at the age sufficient to express a preference by law; (10) the stability of the home *646 environment and employment of each parent; and (11) the other relevant factors in the parent-child relationship. Id.
¶ 4. The chancellor undertook an extensive Albright analysis, finding most factors neutral. Cliff was favored on continuity of care, since he had primary custody of the children after the separation, while Charity was favored because both of the children are female. Overall, the chancellor concluded that both parents were fit and that the Albright factors did not strongly favor one over the other. Based on the specific circumstances of the case, the chancellor determined that joint custody was in the children’s best interests.
¶ 5. Cliff directs his arguments on appeal to the chancellor’s analysis of the Albright factors. He asserts that Charity should not have been favored based solely on the sex of the children. Cliff also argues he should have been favored on the factors of parenting skills and moral fitness because of Charity’s admitted post-separation adultery. Finally, he contends that the chancellor failed to give proper weight to the greater availability of his extended family and the fact that Charity’s work schedule only allowed her to take the children to church every other Sunday and Wednesday.
¶ 6. At the outset, we note that Cliffs argument appears to be based on the mistaken assumption that joint custody cannot be awarded if more of the Albright factors favor him, however slightly. We see no reason why some marginal advantage of one parent should preclude the chancellor from awarding joint custody, so long as both parents are fit and joint custody is found to be in the children’s best interests. See Phillips v. Phillips, 45 So.3d 684, 694 (¶ 30) (Miss.Ct.App.2010). “The Albright factors are a guide. They are not the equivalent of a mathematical formula.” Lawrence v. Lawrence, 956 So.2d 251, 258 (¶ 28) (Miss.Ct.App.2006) (citation and quotation omitted).
¶ 7. From the record it appears that both parents are fit to care for the children. Cliff is a self-employed brick mason, while Charity is a registered nurse. Both are generally healthy and have stable employment and work histories. Cliff stayed in the marital home, while Charity bought a nearby house after the separation. Both parents have cared for the children, are able and willing to continue to do so, and appear to have generally exercised good judgment in child-rearing decisions. The children are healthy and are doing well in school. Although Charity did admit to post-separation adultery, she was careful to keep it from the children; there was no evidence her adultery impacted them, directly or indirectly.
¶ 8. As to Cliffs other specific concerns with the chancellor’s analysis, the joint custody order will allow the children to maintain close relationships to both sides of their extended family. The sex of the children is also a legitimate factor for the chancellor to consider. Both of the Jack-sons’ children are female. What weight to assign to this fact in the Albright analysis is entrusted to the chancellor’s sound discretion; a chancellor may find that it does or does not weigh in favor of the parent of the same sex as the children, depending on the specific facts of the case. This is a finding of fact that cannot be disturbed on appeal absent a clear showing of an abuse of discretion, which Cliff has not made. We find no error in the chancellor’s analysis of the Albright factors.
¶ 9. Even if both parents are fit, joint custody should not be awarded where it is impractical or burdensome to the children. Distance is not an issue in this case-the travel time between Cliff and Charity’s *647 homes was stated to be about twelve minutes, and both parents live near the children’s school.
¶ 10. An award of joint custody also requires that the parents are willing and able to cooperate in sharing custody. Crider v. Crider, 904 So.2d 142, 147-48 (¶ 13) (Miss.2005). On this issue, the record is somewhat mixed. The chancellor was critical of Cliffs refusal to allow Charity more visitation than absolutely required under the letter of the temporary order. There were also communication problems and an incident where the parents disagreed over where and when the younger daughter would have her tonsils removed. During this dispute, both parents scheduled or altered the child’s medical appointments without consulting the other parent. Nonetheless, both parties asked the chancellor to consider joint custody as an alternative to vesting sole physical custody in one parent.
¶ 11. The chancellor — aware of the Jacksons’ prior difficulties — thoroughly examined them to ensure they were willing to share decision-making responsibilities, exchange information, and consult each other on matters concerning the children. Cliff and Charity consented to an order of the court to attend and complete a parenting class called “Children in the Middle,” to facilitate the joint custody arrangement. The chancellor appears to have been satisfied that the Jacksons were willing and able to cooperate and make joint custody work for their children. The chancellor “is in the best position to evaluate the credibility, sincerity, capabilities and intentions of the parties” with regard to joint custody. Id. at 147 (¶ 13).
¶ 12. We have reviewed the record, and we find no abuse of the chancellor’s discretion in awarding joint custody.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF UNION COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.