FAIR, J.,
for the Court:
¶ 1. Tashfeen (Tash) Solangi brought suit against Kacey Croney to establish paternity and secure custody of Caleb Aaron Croney, a child born out of wedlock. After a trial, the chancellor awarded custody and attorney’s fees to Kacey. Tash contests these decisions on appeal. We reverse and render the award of attorney’s fees, but we find that the chancellor otherwise acted within his discretion.
FACTS
¶ 2. Tash and Kacey worked together at the Stennis Space Center and became involved in an intimate relationship. Kacey gave birth to Caleb on October 22, 2004. She has another child, Kaitlin, who is about seven years older than Caleb. Tash recognized Caleb as his child, and although Tash had some difficulty coming forward as an unwed father, he quickly became very involved in Caleb’s life. Tash and Kacey entered into an informal agreement for support and visitation, which Tash exercised extensively. Child care for Caleb was largely provided by Tricia Stockstill, Kacey’s mother. As Caleb approached school age, Tash filed this suit to seek custody.
¶ 3. After a lengthy trial, the chancellor found that it was in Caleb’s best interest to remain in Kacey’s physical custody, with legal custody to be shared by both parents. Tash was ordered to pay Kacey’s attorney’s fees, and Caleb’s name was changed from “Caleb Aaron Croney” to “Caleb Aaron Croney Solangi.” Child support was ordered, but it has not been contested on appeal.
STANDARD OF REVIEW
¶4. Questions of law are reviewed de novo. Irving v. Irving, 67 So.3d 776, 778 (¶ 11) (Miss.2011). A chancellor’s factual findings, on the other hand, will not be disturbed unless he was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. Carambat v. Carambat, 72 So.3d 505, 510-11 (¶ 24) (Miss.2011). As long as substantial evidence supports the chancellor’s findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. Joel v. Joel, 43 So.3d 424, 429 (¶ 14) (Miss.2010). Additionally, if the chancellor has made no specific findings, we generally proceed on the assumption that he resolved fact issues in favor of the appellee. Ferrara v. Walters, 919 So.2d 876, 881 (¶ 8) (Miss.2005).
DISCUSSION
1. Custody of Caleb; Albright Factors
¶ 5. Tash devotes the majority of his brief to the argument that the chancellor should have awarded custody of Caleb to him.
*176 ¶ 6. In Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), the Mississippi Supreme Court held that the best interest of the child must control in all custody decisions, and this principle has been adopted by the Legislature in Mississippi Code Annotated section 93-5-24 (Rev.2004). In determining the best interest of the child in custody disputes, it is the court’s duty to consider that the relationship of parent and child is for the benefit of the child, not the parent. See Reno v. Reno, 253 Miss. 465, 475, 176 So.2d 58, 62 (1965) (citing J.W. Bunkley, Jr. & W.E. Morse, Bunkley and Morse’s Amis on Divorce and Separation in Mississippi § 8.01 (2d ed.1957)).
¶ 7. To determine where the child’s best interest lies, chancellors must consider the following factors when evaluating the fitness of each parent: (1) age, health, and sex of the children; (2) continuity of care; (3) parenting skills and the willingness and capacity to provide primary child care; (4) employment responsibilities of the parents; (5) physical and mental health and age of the parents; (6) moral fitness of the parents; (7) emotional ties of the parents and children; (8) home, school, and community records of the children; (9) preference of children twelve years of age or older; (10) stability of the home environment and employment of each parent; and (11) other relevant factors in the parent-child relationship. Albright, 437 So.2d at 1005.
¶ 8. The chancellor is required to address each of the Albright factors that is applicable to the case before him. See Powell v. Ayars, 792 So.2d 240, 244 (¶ 10) (Miss.2001). However, the chancellor need not decide that every factor favors one parent over the other. See Weeks v. Weeks, 989 So.2d 408, 411 (¶ 12) (Miss.Ct.App.2008). Nor is Albright a mathematical formula where custody must be awarded to the parent who “wins” the most factors. Lee v. Lee, 798 So.2d 1284, 1288 (¶ 15) (Miss.2001). Instead, the Albright factors exist to ensure the chancellor considers all the relevant facts relating to the child’s best interest. “All the factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit.” Johnson v. Gray, 859 So.2d 1006, 1013-14 (¶ 36) (Miss.2003).
¶ 9. The chancellor issued a written opinion containing a discussion of each Al-bright factor, as well as an overall analysis regarding Caleb’s best interest. From this, it is apparent that the chancellor held both Tash and Kacey in high regard and found little fault in either’s willingness or ability to care for Caleb. The chancellor found the decisive factor to be Kacey’s continuity of care. On appeal, Tash challenges the chancellor’s findings on most of the individual Albright factors, contending that the chancellor failed to consider or properly weigh various facts that support his claim for custody. Although the chancellor discussed each factor separately, we have combined those with a common factual nexus for our analysis on appeal.

A. Age, health, and sex of the child

¶ 10. At the time of trial, Caleb was five years of age. His health was generally good, but there was some testimony that he was overweight and suffered from frequent sinus and ear infections. Tash attributed Caleb’s health issues to secondhand smoke he experienced while in the care of Trida Stockstill, Kacey’s mother. However, the causal link was never established during the trial except by lay attribution. There was also testimony that Stockstill did not smoke inside and that she had carefully avoided smoking when she was in an enclosed area with Caleb. Stockstill testified that she washed her hands after smoking and used air purifiers *177 in her home. Additionally, Tash acknowledged that he smoked, though he averred that he did not do it in Caleb’s presence. In conclusion, there was simply no competent evidence that Caleb’s health would be better served in Tash’s custody.
¶ 11. Tash also contends the chancellor ignored Caleb’s sex. However, it is obvious from the record that this is not the case. The chancellor acknowledged Caleb’s gender in his opinion and explained from the bench that he did not find it decisive because of Caleb’s young age. “What weight to assign to [the child’s sex] is entrusted to the chancellor’s sound discretion; a chancellor may find that it does or does not weigh in favor of the parent of the same sex ... depending on the specific facts of the case.” Jackson v. Jackson, 82 So.3d 644, 646 (¶ 8) (Miss.Ct.App.2011). It is clear the chancellor gave due consideration to Caleb’s sex, and we cannot say that his decision as to how to weigh that fact is manifestly in error.

B. Continuity of care

¶ 12. The chancellor found that this factor favored Kacey. The proof at trial showed that Kacey had cared for Caleb for most of his early life, while Tash had gradually taken a more active role. It was undisputed that immediately before the trial Tash had Caleb for twelve days each month, but the history and extent of Tash’s pretrial custody was disputed. The chancellor was entitled to favor the characterization offered by Kacey, which was that Tash exercised extensive visitation rather than custody. It was undisputed that Tash often did “fun” things with Caleb during his time, but Kacey testified she had always been responsible for the business end of child rearing — doctor and dentist’s visits, prescriptions, haircuts, and so forth. Even Tash acknowledges that Caleb spent more time with Kacey. We cannot say that the chancellor erred in his findings under this factor.

C. Parenting skills; moral fitness

¶ 13. The chancellor found that both parents had excellent parenting skills. On appeal, Tash contends that the lack of “independent” testimony regarding Ka-cey’s parenting ability required the chancellor to find this factor in his favor. We disagree: “Where there is conflicting testimony, the chancellor, as the trier of fact, is the judge of the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation.” Bowen v. Bowen, 982 So.2d 385, 395 (¶ 42) (Miss.2008) (quotations omitted).
¶ 14. On the issue of moral fitness, the chancellor found some fault with both parties. Both had exposed Caleb to unmarried sexual partners. The best that Tash can say is that he never spent the night with a girlfriend while Caleb was present-other than Kacey, that is. However, there was no evidence Caleb was even aware of Kacey’s indiscretions, much less that they had negatively impacted him. Tash contended he was setting a better example for Caleb by concealing his own immoral behavior and bad habits, but the chancellor was concerned that Tash’s hypocrisy would eventually catch up with him.
¶ 15. Tash also points to several incidents that the chancellor found nearly irrelevant — on two occasions Kacey took her daughter along to the New Orleans area to pick up her boyfriend when he was too drunk to drive. Kacey also drove for several months while her driver’s license was suspended for failing to pay a speeding ticket from Louisiana. We agree with the chancellor that these facts have little bearing on Kacey’s moral fitness or parenting skills.
*178 ¶ 16. The chancellor found these factors neutral. We find that conclusion supported by the record.

D. Willingness and capacity to provide care; employment responsibilities

¶ 17. Both Tash and Kacey demonstrated that they were willing and able to care for Caleb. Both had good paying jobs with some flexibility in their working hours, could count on support from their families, had residences with enough space for the child, and so on. Tash contends that he had some marginal advantages, but we find the chancellor well within his discretion in concluding that these factors did not favor one parent over the other.

E. Age and health of the parents

¶ 18. Both Tash and Kacey were in their early thirties, active, and generally healthy. Tash smoked, and Kacey admitted she had felt “depressed” as a result of the custody dispute; but the record strongly supports the chancellor’s conclusion that this factor was neutral.

F. Emotional ties

¶ 19. There is an abundance of evidence in the record that Caleb had a close emotional bond with both of his parents. Tash focuses on testimony that Caleb had been manifesting anxiety when Tash returned him to Kacey’s custody in recent months. Both parents blamed the other for this, and our review of the record gives us no reason to credit Tash’s testimony when the chancellor did not.

G. Home, school, and community record of the child; stability of the home environment

¶20. The evidence at trial indicated that Caleb had a home with both parents— activities, preschool, family, friends, and so forth. A few years after Caleb was born, Tash purchased a house in Long Beach. Kacey lived in an apartment in Picayune and had recently moved into a larger, three-bedroom apartment. She testified that she had not purchased a house because of inflated real estate prices after Katrina. Both parties had manifested stable employment and a clear intent to remain in their present communities. We agree with the chancellor that these factors did not strongly favor either party.

H.Other factors

¶21. The chancellor expressed some concern regarding the Solangi family’s poor relationship with Kacey. Also relevant is the preference for keeping siblings together, which favors Kacey. See Kimbrough v. Kimbrough, 76 So.3d 715, 726 (¶ 54) (Miss.Ct.App.2011).

Conclusion

¶22. Tash argues that continuity of care is just one factor and, in his words, should receive only 8.33% of the weight in deciding custody. Thus Tash contends that whatever slight advantages he has eked out of the other factors should require him to prevail.
¶ 23. There is certainly merit to Tash’s contention that this was a close case, and we recognize the difficulty that close cases present, particularly when both parents are able to provide the child with a good home. See Buchanan v. Buchanan, 587 So.2d 892, 897 (Miss.1991). However, we have consistently rejected attempts to reduce the best interest of the child to a mathematical formula. See, e.g., Lee v. Lee, 798 So.2d 1284, 1288 (¶ 15) (Miss.2001). Instead, the chancellor decides how to weigh the Albright factors. See Johnson v. Gray, 859 So.2d 1006, 1013-14 (¶ 36) (Miss.2003). Even if we disagreed with the chancellor on some of the individual *179 factors, we would not substitute our judgment for his as to the child’s best interest, absent a showing of a manifest abuse of discretion. That burden is nearly insurmountable in close cases. We can find no basis to reverse the chancellor’s decision on Caleb’s custody.
2. Visitation
¶ 24. Tash contends, in the alternative, that the chancellor erred in awarding him only slightly more than “standard” visitation, considering his extensive visitation prior to this lawsuit.
¶ 25. “Visitation is a matter within the chancellor’s sound discretion.” Gilliland v. Gilliland, 969 So.2d 56, 72 (¶ 59) (Miss.Ct.App.2007). “The chancellor is charged with fashioning a visitation schedule that is in the best interests of the children, and the chancellor’s visitation decision is afforded great deference by this Court.” Id.
¶26. The chancellor recognized Tash’s close relationship with Caleb, but the prior visitation schedule was possible only because Caleb had not yet started school. Given the distances involved, transportation would be burdensome and disruptive to a school-age child. The chancellor’s visitation award was clearly based on the best interests of the child, and we cannot say it was an abuse of discretion.
3. Caleb’s Middle Name
¶ 27. The chancellor ordered Caleb’s surname changed to Solangi. Neither parent complains of this, but Tash takes issue with the decision to retain Cro-ney as one of Caleb’s middle names. However, all of the authority presented concerns the changing of a child’s surname pursuant to the paternity statute; Tash has cited nothing addressing the circumstances under which a chancellor can change a child’s middle name. “It is the duty of the appellant to provide authority in support of an assignment of error.” Jones v. Howell, 827 So.2d 691, 702 (¶ 40) (Miss.2002). This issue is procedurally barred.
4.Attorney’s Fees
¶ 28. The chancellor awarded Ka-cey approximately $14,000 in attorney’s fees and costs. The award was based on Mississippi Code Annotated section 93-9-45 (Rev.2004), which provides that the defendant in successful paternity actions shall pay costs and attorney’s fees. There are two problems with this award. The first is that the trial from which the award largely derives was for custody rather than paternity, with paternity being admitted by the parties in their initial pleadings. The second problem is more fundamental: the statute states that costs and fees shall be assessed against the defendant. Given that Kacey was the defendant, section 93-9-45 does not authorize an award of costs and fees against Tash.
¶29. We recognize that the issue of attorney’s fees in domestic cases is largely entrusted to the sound discretion of the chancellor. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). Therefore we must also consider the possibility that the award can be justified under the McKee factors. However, that would require that Kacey be unable to pay her own fees. See Dunaway v. Dunaway, 749 So.2d 1112, 1120 (¶ 20) (Miss.Ct.App.1999). No such finding was made by the chancellor, nor would the record support it given that Kacey and Tash were of similar means, with Kacey earning approximately $72,000 per year.
¶ 30. We conclude that the award of fees and costs to Kacey is unsupported by the record and must be reversed and rendered.
*180 5. Remaining Issues
¶ 31. In what he styles his fourth issue, Tash complains of various evidentiary rulings. The argument is cursory at best, and no authority is presented. These issues are proeedurally barred. Jones, 827 So.2d at 702 (¶ 40).
6. Tash’s Brief
¶ 32. Mississippi Rule of Appellate Procedure 32(a) requires that briefs employ “double spacing between each line of text, excluding quotations and footnotes.” It has not escaped this Court’s notice that the line spacing in Tash’s principal brief on appeal is approximately halfway between single and double spaced. This places roughly 25% more lines of text on each page than the rules permit, which appears calculated to circumvent the fifty-page limit allowed by Rule 28(h). We take this opportunity to point out 5 Am.Jur.2d Appellate Review § 526 (2007) (footnotes omitted), which states:
Violation of page limitation may result in the court’s dismissing the appeal, striking the entire brief, treating the case as if no brief were filed, striking the portion of the brief exceeding the page limits, or imposing monetary sanctions, such as denying the prevailing party its costs on appeal.
CONCLUSION
¶ 33. We reverse and render the award of costs and attorney’s fees to Kacey. The judgment of the chancery court is otherwise affirmed.
¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT.