# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00353-COA

**THOMAS C. WOOTEN**                                                        **APPELLANT**

**v.**

**ASHLEY L. SIMMONS WOOTEN**                                               **APPELLEE**

DATE OF JUDGMENT:              02/04/2020
TRIAL JUDGE:                   HON. PAULA DRUNGOLE-ELLIS
COURT FROM WHICH APPEALED:     CLAY COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        RICHARD SHANE McLAUGHLIN
ATTORNEYS FOR APPELLEE:        MATTHEW DANIEL WILSON
                               AMANDA SUSAN BEARD
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED IN PART; REVERSED AND
                               REMANDED IN PART - 01/18/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., GREENLEE AND SMITH, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     The Clay County Chancery Court granted Thomas and Ashley Wooten a divorce based on the ground of irreconcilable differences. The chancellor also distributed the marital property, granted sole physical custody of the minor children to Ashley, and granted joint legal custody of the children to both parties.

¶2.     Thomas now appeals from the chancellor's judgment, arguing that the chancellor erred by (1) disregarding Ashley's retirement savings in the equitable-distribution analysis; (2) granting physical custody of the children to Ashley; and (3) refusing to deviate from the statutory child-support guidelines. Finding error with only the portion of the chancellor's

judgment regarding Ashley's retirement savings account, we reverse and remand the case for further proceedings consistent with this opinion. As to the matter of child custody and child support, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶3.     Thomas and Ashley Wooten were married on June 18, 2011. They had two children, B.W. and C.W., before they separated in October 2015.[1] On March 19, 2018, Thomas filed for divorce from Ashley on the statutory ground of desertion and/or habitual cruel and inhuman treatment or, alternatively, on the ground of irreconcilable differences. On September 14, 2018, Ashley filed her answer and counter-complaint for divorce. She alleged that she was entitled to a divorce on the ground of uncondoned adultery and/or habitual cruel and inhuman treatment. Alternatively, Ashley requested a divorce on the ground of irreconcilable differences.

¶4.     In October 2019, the parties agreed and entered a consent to divorce on the ground of irreconcilable differences. Before the commencement of trial, the parties agreed that they would leave the issues of child custody, child support, and property division to the court's determination.[2] The two-day trial began on October 29, 2019, and concluded on January 15, 2020. Both Thomas and Ashley introduced evidence and presented several witnesses.

¶5.     The chancellor issued an order on January 31, 2020, and a supplemental opinion and final judgment on February 4, 2020. The chancellor awarded Ashley sole physical custody

---

[1] We use initials to protect the identities of the minor children.

[2] The parties agreed that the line of demarcation date for the equitable distribution was October 14, 2015.

2

of the children and joint legal custody to both parties. The chancellor ordered that Thomas' monthly child-support payments be increased from $239 for one child to $780 for two children. The chancellor also awarded Ashley a retroactive increase in the child support payments and declined Thomas' request to reduce the statutory support.[3]

¶6.    As to the property division, the chancellor determined that the parties' marital property included (1) two vehicles— a 2000 Ford F250 and a 2015 Dodge Ram; (2) any of Ashley's retirement funds accumulated with BancorpSouth Bank from July 2011 to October 14, 2015; (3) BancorpSouth Bank credit-card debt in the amount of $880; and (4) Discover credit-card debt in the amount of $1,938.15. According to the chancellor's findings, the parties' separate property consisted of (1) Thomas' checking and retirement accounts with Kinder Morgan Gas Company; (2) Ashley's BancorpSouth Loan; (3) Ashley's PERS and Cadence Bank retirement account; and (4) Ashley's student loan.

¶7.    Thereafter, the chancellor awarded Ashley the 2015 Dodge Ram, the BancorpSouth Bank credit-card debt, and the Discover credit-card debt. Thomas was awarded the 2000 Ford F250. Subsequently, the chancellor denied Ashley's request for reimbursement of the children's medical expenses and denied her request for attorney's fees after determining that Ashley failed to show a financial inability to pay.

¶8.    Thomas now appeals from the chancellor's judgment, arguing that the chancellor erred by (1) disregarding Ashley's retirement savings in the equitable-distribution analysis;

---

[3] Thomas and Ashley previously separated in 2009. During the separation, Ashley went to the Department of Human Services seeking child support assistance from Thomas. Thomas agreed to pay child support in the amount of $239 a month for B.W.

(2) granting physical custody of the children to Ashley; and (3) refusing to deviate from the statutory child-support guidelines.

## STANDARD OF REVIEW

¶9. "This Court has a limited standard of review in examining and considering the decisions of a chancellor." *Ravenstein v. Ravenstein*, 167 So. 3d 210, 215 (¶8) (Miss. 2014). If supported by substantial evidence, a chancellor's factual findings will not be disturbed unless "the chancellor abused [her] discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Varnell v. Rogers*, 198 So. 3d 1278, 1280 (¶7) (Miss. Ct. App. 2016). On appeal, this Court "is required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990). "This is particularly true in the areas of divorce and child support." *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994) (citing *Nichols v. Tedder*, 547 So. 2d 766, 781 (Miss. 1989)).

## DISCUSSION

### I.    Equitable Distribution

¶10.   Our supreme court has "long recognized that, incident to a divorce, the [c]hancery [c]ourt has authority, where the equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties." *Ferguson*, 639 So. 2d at 924 (quoting *Brown v. Brown*, 574 So. 2d 688, 690 (Miss. 1990)). Therefore, the court adopted guidelines in *Ferguson* for the equitable-distribution method for dividing marital assets. *Id*. at 928. "There is no automatic right to an equal division of jointly-accumulated

4

property, but rather, the division is left to the discretion of the court." *Brown*, 574 So. 2d at 691.

¶11. Thomas argues that the chancellor erred by failing to classify Ashley's retirement account as marital property. We reexamine the chancellor's application of the *Ferguson* factors, but in doing so, we do not conduct a new *Ferguson* analysis. *Phillips v. Phillips*, 904 So. 2d 999, 1001 (¶8) (Miss. 2004). Instead, we "review[] the judgment to ensure that the chancellor followed the appropriate standards and did not abuse [her] discretion." *Id*. In the present case, we must decide whether the chancellor's denial of a portion of Ashley's retirement benefits to Thomas, which was acquired during their marriage, complies with the *Ferguson* standards. We find that it does not.

¶12. "Marital assets include any and all property acquired or accumulated during the marriage." *Carrow v. Carrow*, 741 So. 2d 200, 202 (¶10) (Miss. 1999) (citing *Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994)). "Retirement plans are considered marital assets." *Phillips*, 904 So. 2d at 1002 (¶9) (citing *Coggin v. Coggin*, 837 So. 2d 772, 775 (¶5) (Miss. Ct. App. 2003)); *see also Owens v. Owens*, 798 So. 2d 394, 400 (¶16) (Miss. 2001).

¶13. At the hearing, Ashley admitted that her BancorpSouth retirement savings, in the amount of $15,018.19, was accrued during the course of the marriage:[4]

> Q:  So whatever retirement you generated at BancorpSouth Bank, that was during the marriage and before you separated, right?
>
> A:  Yes.

---

[4] The record reflects that the value of Ashley's BancorpSouth retirement account was submitted in her Rule 8.05 financial statement. *See* UCCR 8.05.

Although Ashley admitted that the BancorpSouth retirement account was accrued during the marriage, the chancellor made the following determination regarding the account:

> The Court values the 2000 Ford F250 at $500.00 and the 2015 Dodge Ram at $6,102.00; and $0.00 value for [Ashley's] BancorpSouth Bank retirement account. Each party has requested their respective vehicle. [Ashley] has requested that she retain her BancorpSouth retirement account. [Thomas] made no specific claim to this account.

¶14. On appeal, Ashley fails to address this issue and does not rebut Thomas' contention that the chancellor failed to properly value or account for Ashley's retirement account in the equitable-distribution analysis. As a result of the chancellor's findings, we reverse and remand for the chancellor to revise the distribution of Ashley's retirement account in the division of marital assets.

**II.    Child Custody**

¶15. "[T]he polestar consideration in child custody cases is the best interest and welfare of the child." *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). To meet these goals, courts evaluate the following factors introduced in *Albright*:

1. The age, sex, and health of the child;

2. The continuity of care prior to the separation;

3. The parenting skills of each parent;

4. The willingness and capacity to prove primary child care;

5. The employment of the parents and the responsibilities of that employment;

6. The physical and mental health and age of the parents;

7. The emotional ties of the parent and the child;

6

8. The moral fitness of each parent;

9. The home, school, and community record of the child;

10. The preference of the child;

11. The stability of the home environment; and

12. The other factors relevant to the parent-child relationship.

*Id*.

¶16.    "The *Albright* factors are intended to ensure that the chancellor follows a process that considers all facts relevant to the child's best interest." *Baumann v. Baumann*, 304 So. 3d 175, 179 (¶13) (Miss. Ct. App. 2020) (citing *Vassar v. Vassar*, 228 So. 3d 367, 375 (¶27) (Miss. Ct. App. 2017)).  However, "an *Albright* analysis is not a mathematical formula." *Bingham v. Johnson*, 322 So. 3d 948, 952 (¶19) (Miss. Ct. App. 2021) (citing *Lee v Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001)). While all the *Albright* factors are essential, "the chancellor has the ultimate discretion to weigh the evidence the way she sees fit." *Id*. (citing *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003)). "We give deference to the weight that the chancellor assigns to each *Albright* factor." *Baumann*, 304 So. 3d at 179 (¶14) (citing *Smith v. Smith*, 206 So. 3d 502, 513 (¶24) (Miss. 2016)). "This Court cannot re-weigh the evidence and must defer to the chancellor's findings of facts, including her decision regarding the evidence's weight and credibility." *Id*. (citing *Hall v. Hall*, 134 So. 3d 822, 828 (¶21) (Miss. Ct. App. 2014)). We may not substitute our judgment for the chancellor's. *Brewer v. Brewer*, 919 So. 2d 135, 141 (¶23) (Miss. Ct. App. 2005). Rather, we must decide if substantial evidence supports the ruling. *Id*.

¶17. Thomas claims the chancellor erred in her analysis of several *Albright* factors. In particular, he maintains the chancellor improperly found that the following factors were neutral: (1) the age, sex, and health of the children, (2) the parties' physical and mental health and age, (3) the parents' moral fitness, and (4) the home, school, and community record of the children. Thomas also contends (5) the chancellor erred when she found that the emotional-ties factor favored Ashley.

### 1. Age, Sex, and Health of the Children

¶18. Thomas asserts that the chancery court erred by not finding that this factor favored him because the children were male and above the age of tender years. "[A] chancellor may find that [the child's sex] does or does not weigh in favor of the parent of the same sex as the children, depending on the specific facts of the case." *Barbaro v. Smith*, 282 So. 3d 578, 597 (¶85) (Miss. Ct. App. 2019) (citing *Jackson v. Jackson*, 82 So. 3d 644, 646 (¶8) (Miss. Ct. App. 2011)). Therefore, "a chancellor may determine that the sex of a male child weighs in favor of granting custody to the father." *Id.*; *see*, *e.g.*, *Klink v. Brewster*, 986 So. 2d 1060, 1063-64 (¶13) (Miss. Ct. App. 2008). "What weight to assign to this fact in the *Albright* analysis is entrusted to the chancellor's sound discretion . . . . This is a finding of fact that cannot be disturbed on appeal absent a clear showing of an abuse of discretion . . . ." *Id.*

¶19. In analyzing the children's age, sex, and health, the chancellor recognized that the minor children were male and in relatively good health. In finding this factor neutral, the chancellor explained that since the boys were ages eight and ten, they were "long" past the age that required any special type of care due to a tender age. We cannot say that the

chancellor abused her discretion and find no manifest error in the chancellor's conclusion that this factor was neutral.

### 2. Physical and Mental Health of the Parties

¶20. Thomas asserts that the chancellor erred by concluding that this factor was neutral in light of Ashley's history of panic attacks. Here, the issue is whether a parent's panic attacks should count against that parent in a custody proceeding when there is no evidence that the attacks impair the parent's ability to care for the child.

¶21. In analyzing this factor, the chancellor took into account that Ashley has suffered "one or more panic attacks in her lifetime." However, with this fact in mind, the chancellor also found, and the record reflects, that the panic attacks did not alter Ashley's ability to care for her children. The chancellor is "vested with the responsibility to hear the evidence, assess the credibility of witnesses, and determine ultimately what weight and worth to afford any particular aspect of proof." *Hackler v. Hackler*, 296 So. 3d 773, 778 (¶35) (Miss. Ct. App. 2020) (quoting *Garner v. Garner*, 283 So. 3d 120, 140 (¶84) (Miss. 2019)). The chancellor's findings are supported by substantial evidence, and we find no error or abuse of discretion in the chancellor's finding that this factor was neutral.

### 3. Moral Fitness of Each Parent

¶22. Thomas claims the chancellor erred by finding the moral-fitness factor neutral. Specifically, Thomas claims that if the chancellor had appropriately considered Ashley's admitted pre-separation adultery, this factor would have favored him.

¶23. Our supreme court has held that "marital fault should not be used as a sanction in

custody awards." *Albright*, 437 So. 2d at 1005. "Adultery of a parent may be an unwholesome influence and an impairment to the child's best interest, but on the other hand, may have no effect. The trial court should consider this factor along with all others when making original custody determinations." *Kimbrough v. Kimbrough*, 76 So. 3d 715, 725 (¶55) (Miss. Ct. App. 2011) (quoting *Carr v. Carr*, 480 So. 2d 1120, 1123 (Miss. 1985)).

¶24. The chancellor was not presented with any evidence that Ashley's pre-separation adultery impaired the children's best interest. Even though the chancellor did not mention Ashley's pre-separation adultery under her findings for the moral-fitness factor, we cannot say the chancellor erred in finding this factor neutral. The chancellor noted that Thomas had another child during the marriage with his current girlfriend, and the chancellor found that both parties had "moved on with their lives and have pursued new romantic interests." We, therefore, find no error with respect to the chancellor's findings on this factor.

### 4. Home, School, and Community Records of the Children

¶25. Thomas also challenges the chancellor's finding that the children's home, school, and community records were a neutral factor. Thomas claims that the chancellor disregarded the children's connection to Clay County and the tenuous connection with Ashley's county of residence, Monroe County.

¶26. To the contrary, the chancellor did not disregard these connections. While Thomas remains in Clay County and Ashley resides in Monroe County, there was ample testimony that both parents were involved in the children's school and extracurricular activities, the children had good grades, and both parents had extended family and support systems nearby.

10

The chancellor also heard testimony that even after Ashley moved to Monroe County, she continues to spend most of her time in Clay County, and her living in Monroe did not prevent the children from visiting their friends or family who reside in Clay County. Furthermore, in analyzing this factor, the chancellor noted that both parents had households that appeared to be "quite crowded" but did not find that it had any adverse effect on the children. Based on a review of the record, we cannot say the chancellor abused her discretion or manifestly erred in finding that the children's home, school, and community records were a neutral factor. Since substantial evidence supports the chancellor's determination as to this factor, we find no error.

### 5. Emotional Ties

¶27. Thomas claims the chancellor erred by finding the emotional-ties factor favored Ashley. Specifically, Thomas claims that no evidence existed to support the chancellor's determination. However, the chancellor noted that both Ashley's and her witnesses' testimony established she had strong emotional ties to the children. The chancellor found that Thomas' testimony centered more around the parties' eldest child, B.W. The chancellor expressed her concern that the couple's youngest child, C.W., "may have to fight for the attention of his father and his family due to the arrival of his younger sibling and the favoritism that [Thomas] shows towards [B.W.]" After considering the testimony and evidence presented, the chancellor found this factor favored Ashley. The record contains substantial evidence to support the chancellor's findings. Therefore, we find no error.

¶28. Upon review, we cannot say that the chancellor was manifestly wrong, was clearly

11

erroneous, or applied an incorrect legal standing in her *Albright* analysis. Because substantial evidence supported the chancellor's findings, we affirm the chancellor's grant of sole physical custody of the parties' children to Ashley and joint legal custody to both parents.

### III. Child Support

¶29. For his final assignment of error, Thomas claims that the chancellor abused her discretion by refusing to deviate from the statutory child-support guidelines. Specifically, Thomas claims that since he would have custody of the children forty percent of the time, the chancellor should have deviated from the statutory support guidelines.

¶30. "A chancery court has discretion in determining an award of child support." *Gunter v. Gunter*, 281 So. 3d 283, 285 (¶8) (Miss. Ct. App. 2019) (citing *Harden v. Scarborough*, 240 So. 3d 1246, 1255 (¶26) (Miss. Ct. App. 2018)). This Court "will not find an abuse of discretion when the required support [is] equal to the amount that is presumptively correct under the child-support guidelines." *Id*. (quoting *Mosher v. Mosher*, 192 So. 3d 1118, 1126 (¶38) (Miss. Ct. App. 2016)). However, the guidelines are merely guidelines, and they "do not control per se the amount of an award of child support." *Id*. at 286 (¶10). Since the chancery court "has special knowledge of the actual circumstances," *McEachern v. McEachern*, 605 So. 2d 809, 814 (Miss. 1992), a departure is permissible when the chancery court makes "a written finding on the record that the application of the guidelines would be unjust or inappropriate . . . ." *Id*. (citing *Dunn v. Dunn*, 695 So. 2d 1152, 1155 (Miss. 1997)).

¶31. Here, the chancellor ordered Thomas to pay twenty percent of his adjusted gross income as reflected by his Rule 8.05 financial statement and in accordance with the statutory

guidelines. *See* Miss. Code Ann. § 43-19-101(1) (Rev. 2021) (establishing a rebuttable presumption that twenty percent of the payor's adjusted gross income should be awarded for the support of two children). We find that the chancellor did not abuse her discretion by setting child support based on the statutory guidelines.

## CONCLUSION

¶32. We reverse the judgment in part and remand this case for further proceedings consistent with this opinion. On remand, the chancellor must reconsider the equitable division of Ashley's retirement account under *Ferguson*. Finding no error in the chancellor's child support order or in the award of child custody, we affirm the judgment in part.

¶33. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**