## Mississippi Power Co. v. Ballard et al.

(Division A. April 9, 1934.)

[153 So. 874. No. 30975.]

480

See, also, 166 Miss. 631, 146 So. 874.

Eaton & Eaton, of Gulfport, Ford & McGehee and Rawls & Hathorn, all of Columbia, and Wilbourn, Miller & Wilbourn, of Meridian, for appellant.

Roy J. Goss, B. J. Goss and Hall & Hall, all of Columbia, for appellees.

**Cook, J.**, delivered the opinion of the court.

Appellees instituted this suit in the circuit court of Marion county against the appellant, seeking to recover damages to their residence alleged to have been sustained by reason of the construction, maintenance, and operation of an electric substation near such residence. There was a verdict and judgment for one thousand dollars, from which this appeal was prosecuted.

The declaration does not charge that the location of the substation was unlawful or in violation of any zoning law of the city of Columbia, or that it was negligently constructed, or that its mere presence near the property of appellees causes any damage, but the suit is predicated upon the theory that the results of the construction and maintenance of the substation constitute such an invasion of appellees' property as to produce a depreciation in the value thereof. The declaration charges numerous results from the maintenance and operation of the substation which constitute alleged violations of appellees' legal rights, all of which upon the proof offered in support thereof were correctly eliminated by instructions of the court, except two. The two charges of the declaration that were submitted to the jury were that "the defendant has maintained and operated the said substation in close proximity to the plaintiffs' said property in such a manner as to invade the rights of the plaintiffs, in this, to-wit:

"a. Has continuously created a constant hum or noise, which permeates the surrounding atmosphere and is continuously heard by plaintiffs while occupying their said dwelling house. . . .

"d. The said power wires and plant are so maintained by the defendant that on frequent occasions large balls of fire are caused to explode upon and about said plant with a tremendous sound, thereby putting the plaintiffs in great fear and rendering their said home almost uninhabitable."

The testimony is voluminous in reference to alleged invasions of appellees' property resulting from the operation of the substation, with much testimony of a technical nature in reference to proper and approved construction of electrical stations and appliances, and the known and somewhat speculative properties and characteristics of electricity, both artificial and as manifested in lightning. The court below correctly eliminated much of this testimony from the consideration of the jury, by instructing it that under the proof the substation is properly equipped with modern and approved appliances of standard construction, properly installed, and in good condition; that it is not unlawfully or negligently located, constructed, or maintained; that the appellant cannot control lightning or atmospheric electricity, or prevent its getting on its lines or wires; that there is no reasonable ground for apprehension of danger to persons or property from the presence and operation of the station; that no recovery could be had on account of radio interference, or interference with the efficient use of their radio; that there could be no recovery on account of danger signs on the substation, or on account of physical injury to appellees' residence from noise and vibrations; and that there could be no recovery on account of any decline in the market value of the property due to general business conditions and the general decline in value of materials and labor; and the court might have properly instructed the jury that there could be no recovery on account of a humming noise which constantly emanated from the transformers in the substation, as we do not think the evidence shows that this noise was of sufficient

intensity to interfere with the comfortable use of the property or to impair the market value thereof.

There are numerous authorities supporting the view that recovery may be had for noise when it is of such character and intensity as to so unreasonably interfere with the comfort and enjoyment of private property as to constitute private nuisance and materially diminish the market value of such property. 20 R. C. L. 445, and authorities there cited. This doctrine is expressly recognized in this state in the case of King v. Railway & Light Co., 88 Miss. 456, 42 So. 204, 205, 6 L. R. A. (N. S.) 1036, 117 Am. St. Rep. 749, wherein the effect of section 17, Constitution of 1890, was discussed in the following language:

"Public authority may confer the right to operate a public work, and thus make it lawful, but cannot confer a right to take or damage private property without compensating the owner for its value as taken or damaged —i. e., diminished in its market value as property—by some physical invasion of it or by affecting some right of the owner in relation to it. . . . Constitution, section 17, makes the right of the owner of private property superior to that of the public, reversing the former rule that the individual might be made to suffer loss for the public. He may still be compelled to part with his property for public use, but only on full payment for it or any right in relation to it. . . . The decisions of this court since the Constitution of 1890 give full effect to the just rule established by its seventeenth section, by maintaining the right of the owner to be fully compensated for any loss of value sustained from any physical injury to his property or disturbance of any right in relation to it, whereby its market value is diminished."

In the case at bar there were many witnesses who testified as to electrical disturbances emanating from this substation at times of local storms, and at times of storms at distant points along the power line extending east from Columbia. These electrical displays and disturbances

were described in detail, a comprehensive conception of which, however, would require an examination of the entire testimony of these witnesses. In general terms their testimony was to the effect that there were frequent displays of electricity over the entire substation resulting in loud and violent explosions and the shooting of balls of fire, large and small, into the air, and onto the ground surrounding the substation, which balls of fire were either projected into the residence of appellees or created a blinding light so intense as to create the illusion of actual fire in the home. As to the possibility of such electrical displays as were described by the appellees' witnesses, the frequency, extent, and intensity thereof, the evidence was conflicting, but we are of the opinion that it was proper to permit the jury to pass upon this conflicting testimony, and to say whether these electrical displays were of such character as to so materially affect the right to the use and enjoyment of the property as to diminish the market value thereof. Consequently, the court below committed no error in refusing the peremptory instruction requested by the appellant.

The appellant contends that error was committed in admitting the testimony of other persons residing in the vicinity of the substation as to electrical disturbances emanating from it, and as to the effect upon them and the condition created thereby in their residences. This testimony was not offered to show that other property in the neighborhood was thereby damaged, but its purpose was merely to describe the condition at or near the substation, and the identical incidents and disturbances upon which the appellees relied. The appellees' residence was closer to the substation than any others, and the evidence of these witnesses described similar occurrences under essential physical conditions which were identical, and was therefore admissible as tending to show the existence and harmful effect of the purported disturbances. 22 C. J. 751.

The appellant next complains of the granting to the appellees of the following instruction:

"The court instructs the jury for the plaintiffs that in order for you to return a verdict for the plaintiffs it is not necessary for you to believe that the substation in question was and is unlawfully or negligently located, or unlawfully or negligently operated or maintained, nor is it necessary for you to believe that the defendant is not using modern and proper devices and appliances thereat, but the jury is instructed that if you believe from the evidence that the location, operation and presence of the substation at the place in question is such that the same has substantially diminished the market value of the property of the plaintiffs and that the plaintiffs have been thereby damaged, then the jury should return a verdict for the plaintiffs in such amount as you may believe from the evidence that the market value of said property of the plaintiffs has been lessened or diminished by reason thereof."

As we construe this instruction it authorized a recovery for any depreciation of market value of appellees' property resulting from the mere location, operation, and presence of the substation at the place in question, regardless of whether or not the noises, explosions, and reflections of light resulting from electrical discharges emanating from the substation were of such nature, frequency, and intensity as to constitute such substantial and material interference with the comfort and convenience of the appellees in the use of their property to materially diminish the market value thereof. We think this was error, and that the limitation indicated above should have been embodied in the instruction, and for this error the judgment of the court below will be reversed.

Upon a new trial the evidence to establish depreciation of the market value, if any, should be limited to such depreciation as resulted solely from those elements which

are sufficiently established by the proof to constitute an invasion of appellees' legal rights.

Reversed and remanded.