757 So.2d 1066 (2000)
James D. LAMBERT and Maria T. Lambert, Appellants,
v.
Thomas Wylie MATTHEWS, Janet Guillot Matthews, Charles Jennings, Eloise C. Jennings, Timothy A. Walker, Julia S. Walker, Kevin Michael Smith, Sandra Johnston Smith and J.R. Idom, Appellees.
No. 97-CA-01034-COA.
Court of Appeals of Mississippi.
April 4, 2000.
*1067 Lisa D. Jordan, Natchez, Attorney for Appellants.
John E. Mulhearn Jr., Natchez, Attorney for Appellees.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. James and Maria Lambert were enjoined by the Adams County Chancery *1068 Court from continuing to raise a large number of roosters on their property. On appeal the Lamberts allege that their operations were not a nuisance, that the decision was against the overwhelming weight of the evidence, and that there was no basis to limit them to having only two roosters on the property. We disagree with these contentions and affirm.

FACTS
¶ 2. In August 1995, the Lamberts purchased a ten-acre tract of land in a rural residential area of Adams County located eight miles outside Natchez at the intersection of two gravel roads. In early 1996, they moved to their property a gamecockbreeding operation that consisted of approximately 100 birds, including roosters and hens, along with about 100 structures called "tepees" and 100 pens to accommodate the birds. They also moved their mobile home to the property and began living there. By the time of trial, there were only 19 roosters and 36 hens on the property, a reduction made in response to their neighbors' concerns about the noise. They assert that they do not make a profit from the birds and simply raise them as a hobby.
¶ 3. Plaintiffs Timothy and Julia Walker own a ten-acre tract of land adjoining the Lambert property to the north. They bought the property in 1989 with the intention eventually of building a home on it. It was being used only for recreation on at least a weekly basis when the Lamberts brought in their poultry operation. After the roosters were in place, the Walkers abandoned their plans to build a home on the property and stopped using it for recreation.
¶ 4. Plaintiffs Tom and Janet Matthews and J.R. Idom own separate ten-acre tracts to the east of the Lambert property. They have built homes on their property and intend to continue living in them. The Matthews built their home before the Lamberts moved in. Idom built a house on his property in the spring after the Lamberts brought the roosters to the neighborhood. He also purchased a second residence in March 1996, moving to the property in the summer of 1996.
¶ 5. Plaintiffs Kevin and Sandy Smith own a ten-acre tract to the north of the Walkers' property, on which they live in a mobile home. They moved onto the property in December 1995, before the Lamberts moved their roosters to the neighborhood but after the Lamberts bought their property. Charles Jennings lives directly across the road from the Lambert property. He purchased his land, which he also uses for raising cattle, in 1973.
¶ 6. These plaintiffs sought to have the Lamberts permanently enjoined from having the roosters on their property. Noise and the possibility of disease were the reasons alleged to support that the roosters constituted a private nuisance. They also alleged that the Lamberts were in violation of a statute that prohibits cockfighting in Mississippi. At the end of a four-day trial, the chancellor found no evidence that the Lamberts allowed their roosters to be in any fights in Mississippi, but only in states where gamecock fighting is legal. He also found no evidence that anyone had suffered from any health problems due to the Lamberts's keeping of roosters and hens on their property. He did, however, determine that "the irksome nature of the crowing of the roosters" prevented the plaintiffs from the full use and enjoyment of their property and enjoined the Lamberts from keeping more than two roosters on their property at any time.

DISCUSSION

Issues I. & II. Validity of decision that the use of the property constituted a nuisance
¶ 7. The balancing of equities in a nuisance case is to be done by the chancellor in accordance with established equitable principles. The Lamberts argue that the finding of a nuisance was against the *1069 great weight of the evidence. We will accept the fact-findings as to what was occurring on this property unless this Court can say that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996).
¶ 8. Four days of trial produced testimony from two real estate experts who agreed that the property was in a "rural residential" area, and that there were no protective covenants, no deed restrictions and no zone violations involved. Two medical doctors testified concerning the potential for disease resulting from the droppings of the poultry, primarily hystoplasmosis. Both testified that, in the South, most people have been exposed to the fungus which causes the disease. However, the plaintiffs produced no evidence that any of them had suffered from hystoplasmosis or any other disease as a result of the birds. In addition, an environmental supervisor with the Adams County Health Department inspected the property twice before trial and testified that he could find no health hazards.
¶ 9. Therefore, the only issue before the trial court was whether the noise from the roosters constituted enough of a private nuisance for the poultry operation to be enjoined, in whole or in part. In the words of the trial judge: "Is the rooster operation reasonable under the circumstances?"
¶ 10. Although some of the plaintiffs had built expensive homes on their properties and others lived in mobile homes or had abandoned plans to build, all testified that the noise produced by the roosters prevented them from having full enjoyment and use of their property. Testimony from both sides showed that the crowing of the roosters was greater at certain times of the day and at certain times of the year, but that it was almost always a problem for the surrounding homeowners. The testimony of the homeowners was supported by a videotape introduced by the plaintiffs that demonstrated the obnoxious and constant character of the crowing on a sunny day. Mr. Lambert offered a different videotape that displayed less of a cacophony, but he admitted that he made the tape when the weather was damp and cool, when the crowing was at a minimum. While the Lamberts' real estate expert testified that this level of noise was normal for a rural setting, the trial court disagreed on the basis of the tapes and the testimony of the appellees.
¶ 11. A private nuisance is a nontrespassory invasion of another's interest in the use and enjoyment of his property. One landowner may not use his property in such a way as unreasonably to annoy, inconvenience or harm others. Leaf River Forest Prod., Inc. v. Ferguson, 662 So.2d 648, 662 (Miss.1995). The supreme court has held that whether a use was reasonable depends on a review of all the circumstances. Reed v. Cook Constr. Co., 336 So.2d 724, 725 (1976). Each case is to be decided on its own facts, taking into consideration the location and the surrounding circumstances. Alfred Jacobshagen Co. v. Dockery, 243 Miss. 511, 517, 139 So.2d 632, 634 (1962). Further, it is not necessary that the other property owners be driven from their homes, but only that their enjoyment of life and property is "rendered materially uncomfortable and annoying." Id.
¶ 12. The noisy operation of a drive-in theater was found to be a nuisance when it was of a character to produce actual physical discomfort and annoyance to a person of ordinary sensibilities. Jenner v. Collins, 211 Miss. 770, 775, 52 So.2d 638, 640 (1951). The court also found that the credibility and worth of the evidence presented as to the level of discomfort was peculiarly within the chancellor's province as the trier of fact. Id.
¶ 13. A Mississippi precedent involving this sort of nuisance was not discovered, but trespassing chickens, hogs, dogs and turkeys have been enjoined, through their *1070 owner, from invading the property of surrounding landowners. White v. Lewis, 213 Miss. 686, 692-93, 57 So.2d 497, 499 (1952). Although the court said it was "without power to designate categorically the degree of harassment below which a complainant becomes guilty of an abuse of process," it found that "there was sufficient testimony to justify the learned chancellor in his finding that the nature and extent of vexation by itinerant animals and fowls was sufficient to draw unto complainants the process of the court." Id. at 499.
¶ 14. Likewise, we find that the chancellor here was justified by exhaustive and thorough factfinding and by the weight of the evidence in determining that the Lamberts' rooster operation, as it existed at the time of trial, was a nuisance to surrounding landowners and should be permanently enjoined. The severity of the remedy is the remaining question.

III. Permitting only two roosters
¶ 15. The chancellor found that, since the Lamberts did not rely on the gamecock operation as a source of income, their fortunes would be neither increased nor decreased by his decision. However, he determined that "the absolute banning of roosters in this setting would be unreasonable" and allowed two to remain. He may have relied on testimony that two would be sufficient to provide the required rooster services for the number of hens that the Lamberts then had.
¶ 16. The Lamberts argue that the testimony of a witness who remembered from his childhood that two roosters were enough to provide for "all the eggs we could use" from thirty hens was not a sufficient factual basis for the ruling. They point out that they were not maintaining the roosters and hens for eggproducing, but for breeding and developing bloodlines. However, there is no testimony offered by anyone as to the number of roosters that would be necessary for this purpose.
¶ 17. Having determined that the present number of roosters constituted a nuisance but that it was not necessary to remove all the roosters, the court needed to fashion a remedy based on the evidence that the parties were content to present. Besides having the power to enjoin completely a nuisance when that is required, the chancery court also has the obligation to permit continuation under limitations if that is adequate to abate the nuisance. Jacobshagen, 139 So.2d at 634. In Jacobshagen, the complainants lived near a plant that rendered animal carcasses, hides, feathers and entrails. The court found that the odors and fumes from the plant, which were noticeable for many miles, constituted a private nuisance, but because of its considerable investment in its facilities, the plant might be given "a reasonable time and opportunity to obviate the nuisance." The chancellor delayed the issuance of an injunction, giving specific instructions in the decree as to how the plant might reduce the odor coming from the plant. Id. See also Green v. Lake, 54 Miss. 540, 546-47 (1877) (stating an owner of a mill could be made to employ "science and skill" to abate a nuisance short of complete cessation).
¶ 18. The Supreme Court of Pennsylvania ordered the owner of a drive-in theater with broadcast speakers to install individual automobile speakers to ameliorate a nuisance, since the individual speakers could reduce the offending noise. Guarina v. Bogart, 407 Pa. 307, 180 A.2d 557, 562 (1962). The court stated that, even though the neighborhood was rural, the landowners still had a right to peace and serenity, and that such right might even be greater where they moved to the country to escape city noises. Id. at 560. However, it did not find that it was necessary to enjoin the operation of the theater altogether. Id.
¶ 19. In a case factually similar to the present case, the Court of Appeals of Maryland reviewed a chancellor's ruling that enjoined the defendant from "keeping or permitting to remain on the premises a *1071 great number of fowls, hogs, and dogs, save and except in such manner that the noises made by the same shall not deprive the plaintiff and the members of his family from the reasonable use and comfortable enjoyment of his property and the dwelling house thereon." Singer v. James, 130 Md. 382, 100 A. 642, 643 (1917). The court found that the decree was too vague and that it "should have specifically pointed out the things that he is required to do and to refrain from doing, in order to abate the nuisance which the court found to exist." Id. at 644.
¶ 20. In these precedents, there was evidence that revealed measures that could be taken to abate the nuisance without ending the operation. In this case, such evidence was absent. The chancellor was to act once finding a nuisance. The chancellor has the discretion to enjoin as necessary to end the nuisance, balancing the interests of all parties to the reasonable use and enjoyment of their property. We hold that once the plaintiffs proved the existence of the nuisance, and absent proof from anyone as to what number of roosters less than were then on the property but more than zero would not constitute a nuisance, the chancellor was within his discretion to conclude that zero was an acceptable number. Two being more than zero, we hold that the chancellor did not abuse his discretion insofar as the Lamberts can complain. Equity should adjust the remedy to the need in a nuisance case. Based on the evidence in this case, the chancellor had little upon which to rely in making an adjustment. We find no error.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF ADAMS COUNTY ENJOINING THE DEFENDANTS FROM MAINTAINING A DOMESTIC FOWL RAISING OPERATION WITH MORE THAN TWO ROOSTERS IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.