# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00115-COA

JUNE ROSE THOMPSON VARNELL AND　　　　　　　　　APPELLANTS
DEXTER VARNELL

v.

MICHAEL FREDERICK ROGERS, JUDY　　　　　　　　　APPELLEES
CHISUM ROGERS, LAURA RATLIFF A/K/A
LAURA RATLIFF ROGERS, AND JOSEPH
SADLER

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2014 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JERRY WESLEY HISAW |
| | H.R. GARNER |
| ATTORNEY FOR APPELLEES: | NEAL HOWARD LABOVITZ |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | DISMISSED WITH PREJUDICE THE APPELLANTS' COMPLAINT FOR INJUNCTIVE OR OTHER RELIEF AGAINST THE APPELLEES, ISSUED AN INJUNCTION AGAINST THE APPELLANTS IN FAVOR OF THE APPELLEES, AND AWARDED THE APPELLEES DAMAGES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART – 04/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND ISHEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.　June Rose Thompson Varnell and Dexter Varnell (the Varnells, unless the context

dictates otherwise) appeal from a judgment of the Chancery Court of DeSoto County,

dismissing with prejudice their complaint for injunctive or other relief against Michael Frederick Rogers and Judy Chisum Rogers (the Rogerses, unless the context dictates otherwise), Laura Ratliff a.k.a. Laura Ratliff Rogers (Ratliff), and Joseph Sadler.[1] The chancery court also granted the Rogerses' counterclaim for nuisance against the Varnells and ordered the Varnells to reimburse the Rogerses $1,000 for a fence that the Rogerses had erected on their property to place a barrier between the Rogerses' and the Varnells' properties. The chancery court also ordered the Varnells to pay the Rogerses $5,000 in attorney's fees. The Varnells filed a motion for reconsideration and/or a new trial, which the chancery court denied. The Varnells appeal, arguing that the chancery court erred in (1) not issuing an injunction against the Rogerses, (2) ordering them to reimburse the Rogerses for the fence, and (3) awarding attorney's fees to the Rogerses.

¶2.    Finding that the chancery court did not err in dismissing the Varnells' complaint against the Rogerses and refusing to issue an injunction against the Rogerses, we affirm that portion of the judgment. However, we find that the chancery court erred in ordering the Varnells to pay attorney's fees and to reimburse the Rogerses for the cost of the fence. Therefore, we reverse and render both awards.

**FACTS**

¶3.    On January 23, 2002, June Varnell purchased the Varnells' home in Southaven,

---

[1] Judy and Michael Rogers are husband and wife, Ratliff is Judy and Michael's daughter, and Sadler is a family friend of Judy, Michael, and Ratliff.

2

Mississippi. While the house was being constructed, June testified that she experienced, among other things, vandalism, theft of building materials, the workmen's port-a-potty being overturned multiple times, and garbage being left on her property, all of which the Varnells allege was caused by their neighbors, the Rogerses. The Varnells moved into their home on October 23, 2004. Beginning in 2009 and continuing until 2014, a series of incidents occurred between the Varnells and the Rogerses, all of which the Varnells also allege was caused by the Rogerses, Ratliff, and Sadler. Some of the incidents required the assistance of both law enforcement and the chancery court. Those incidents included, but were not limited to: (1) fireworks landing on the Varnells' property, (2) feces allegedly being placed on the Varnells' porch, (3) alleged "catcalls" by the Rogerses, Ratliff, and Sadler towards the Varnells, (4) leaves that had been raked off the Varnells' property by Dexter appearing back on the Varnells' property the next day, (5) friends of Ratliff allegedly coming and knocking on the Varnells' door, and (6) the Varnells' plants being destroyed.

¶4. In July 2009, Dexter began constructing a fence on the property line between the Varnells' and the Rogerses' properties. However, he halted construction of the fence because he became ill and had to have surgery. Michael then hired a friend to construct a fence on his property, beginning at the point where the Rogerses' partially constructed fence terminated and continuing to the end of the property line between the Varnells and the Rogerses.

¶5. In January 2012, Dexter and Ratliff signed a mutual agreement in the Municipal Court

3

of the City of Southaven whereby "[Ratliff] agreed not to harass or come on the property of [Dexter], nor molest or interfere with [Dexter], or litter the yard of [Dexter]." On January 3, 2014, the Varnells filed a complaint for injunctive relief against the Rogerses, Ratliff, and Sadler. The Varnells sought injunctive relief to preclude the Rogerses, Ratliff, and Sadler from (1) causing a nuisance through the shooting of fireworks, (2) preventing the Varnells from enjoying their property, and (3) continuing to harass the Varnells. Sadler filed a pro se answer, wherein he denied all the allegations in the complaint. Subsequently, the Rogerses filed an answer, by and through counsel, wherein they also denied the allegations within the complaint and, in addition, filed a counterclaim against the Varnells for nuisance. On October 28, 2014, the case was tried before the chancery court, and a plethora of testimony was presented by both the Varnells and the Rogerses.

¶6. Following the close of all the evidence, the chancellor issued a bench ruling in favor of the Rogerses. While issuing her ruling, the chancellor noted the Varnells' lack of actual evidence linking the Rogerses, Ratliff, and Sadler to the numerous acts that they had accused them of committing. The chancery court entered an order, on December 1, 2014, nunc pro tunc for October 28, 2014, that granted to the Rogerses the relief discussed earlier in this opinion. This appeal ensued.

**DISCUSSION**

¶7. A chancellor's factual findings will not be disturbed "when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his

4

discretion, was manifestly wrong, clearly erroneous[,] or applied an erroneous legal standard." *Biglane v. Under the Hill Corp.,* 949 So. 2d 9, 13-14 (¶17) (Miss. 2007) (internal citation and quotation marks omitted). "Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that the chancellor resolved all such fact issues in favor of the appellee." *City of Picayune v. S. Reg'l Corp.,* 916 So. 2d 510, 519 (¶22) (Miss. 2005) (citing *Newsom v. Newsom,* 557 So. 2d 511, 514 (Miss. 1990)). We review questions of law de novo. *Biglane,* 949 So. 2d at 14 (¶17) (internal citation omitted).

> I.     *Injunction*

¶8.     Here, the Varnells argue that the chancellor erred in failing to issue an injunction against the Rogerses, Ratliff, and Sadler. We review a chancellor's denial of an injunction for abuse of discretion. *Ruff v. Estate of Ruff,* 989 So. 2d 366, 369 (¶11) (Miss. 2008) (internal citation omitted). The Mississippi Supreme Court has explained:

> Rather than implying bad faith or an intentional wrong on the part of the trial judge, an abuse of discretion is viewed as a strict legal term that is clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing.

*White v. State,* 742 So. 2d 1126, 1136 (¶42) (Miss. 1999) (internal citation and quotation marks omitted).

¶9.     In support of their argument, the Varnells contend that the injunction against them is "vague and overly broad." They also contend that the injunction is so broad that they could violate the injunction by just looking at the Rogerses or asking the Rogerses to stop shooting

5

fireworks.[2] The Varnells further contend that the testimony produced at trial by the Rogerses was not enough to support an injunction against them. In support of their argument that an injunction should have been issued in their favor, the Varnells point to the incidents previously discussed in the facts section of this opinion and point out that Sadler, who proceeded pro se, testified that he did not have any objection to an injunction being issued against him.

¶10. We briefly review the evidence produced at trial. June testified about the various incidents that occurred from 2004 to 2014, including, but not limited to, fireworks being shot by the Rogerses and landing in the Varnells' yard, feces being left in a bag on the Varnells' porch, and finding a used personal-hygiene item and cigarette butts in their yard. During her testimony, June was asked if she had any proof that the Rogerses were actually the parties committing the acts that she was accusing them of committing. After being asked the question multiple times, she failed to offer any proof, other than her belief, that it was the Rogerses who had committed the acts. The Varnells also put on testimony from Richard Tamboli, the Varnells' landscape designer. Tamboli's testimony echoed June's allegation that the Rogerses and Sadler had driven by the Varnells' home in September 2012 and "ma[de] faces, gestures, [and] funny sounds." Tamboli testified that, while he was

---

[2] The injunction against the Varnells states that "[t]he [Varnells] are restrained from interfering with [the Rogerses'] use and enjoyment of their property[] [and] . . . [that] [the Varnells] are restrained from interfering with [the Rogerses'], [the Rogerses'] family's, and/or [the Rogerses'] guests' use of [the Rogerses'] property and/or public roadways of the city of Southaven."

conducting a consultation with June, he observed a car full of people who had left the Rogerses' home make obscene gestures while passing by the Varnells' yard. However, when asked on direct examination if he could "see the young man that was in the car in the courtroom," Tamboli responded, "It was such a short meeting I couldn't tell you if I recognized him." On cross-examination, when asked if he was testifying that he "did not see the party or recognize the party[,]" Tamboli stated, "I remember seeing people, but you're talking about one meeting. For me to remember exactly that person's face, that's all [sic]."

¶11.    The Varnells also put on testimony from Eileen Murley, a neighbor of both the Varnells and the Rogerses and a friend of June. Murley testified to hearing "screaming, yelling, [and] [n]onsensical noises" coming from the Rogerses, both while she was in her home and at the Varnells' home. She also testified to seeing the Rogerses shooting fireworks on July 4, 2013, and hearing fireworks in the vicinity on other occasions. On cross-examination, when asked if she had actually observed anyone screaming and yelling, Murley testified that she had only observed someone yelling at the Rogerses' home on one occasion when she was standing in the Varnells' driveway. She identified Sadler as the person doing the screaming on that date. However, she acknowledged that he was not directing any kind of threat towards the Varnells. Rather, she testified, "It was nonsensical. No sense to speech, screaming, and yelling." Dexter also testified during the Varnells' case-in-chief and addressed the string of incidents that allegedly occurred between the Varnells and the Rogerses from 2009 to 2014. Dexter testified that he had found fireworks in his yard on

7

"several" occasions. He also testified that in April 2011, he and his wife observed Ratliff get into a physical altercation with a woman in the Rogerses' yard, and while Ratliff was being taken into police custody, he observed her yelling to June, "How ya doing." He identified Exhibit C as the municipal-court agreement between him and Ratliff, wherein she agreed not to harass, litter the Varnells' yard, come on to the Varnells' property, or interfere with the Varnells in any manner. He testified that Ratliff had not lived up to her end of the agreement but did not explain how she had violated the terms of the agreement. Dexter's testimony also echoed his wife's testimony in several respects. On direct examination, when asked about whether he had a problem with the chancery court issuing a mutual injunction enjoining the Rogerses from bothering the Varnells and enjoining the Varnells from bothering the Rogerses, he stated that the Varnells did not have a problem with such an injunction.

¶12. The Varnells argue that the Rogerses did not produce enough evidence to support an injunction in the Rogerses' favor. However, we find that that argument fails because the Rogerses not only testified themselves, but they offered the testimonies of Ratliff and Sadler, all of which detailed the offensive things that the Varnells had done. More specifically, the Rogerses' testimonies included the following allegations: (1) the Varnells had cameras pointing at their home; (2) the Varnells requested that the Rogerses' and Ratliff's guests not park on the public street in front of the Varnells' home; (3) June would throw up the middle finger whenever she saw the Rogerses exiting their home; (4) the Varnells took pictures of the Rogerses' guests as they would come and go; and (5) Dexter had almost run Judy over

8

with his car while she was walking in the street with Michael and their grandchild. The Rogerses also testified that they were in fear of the Varnells and what the Varnells might do next.

¶13.    It is well settled that "[o]ne landowner may not use his land so as to unreasonably annoy, inconvenience, or harm others." *Leaf River Forest Prods. Inc. v. Ferguson,* 662 So. 2d 648, 662 (Miss. 1995). It is also well settled that, "[t]o obtain a permanent injunction, a party must show an imminent threat of irreparable harm for which there is no adequate remedy at law." *Punzo v. Jackson Cty.,* 861 So. 2d 340, 347 (¶26) (Miss. 2003) (quoting *Reynolds v. Amerada Hess Corp.,* 778 So. 2d 759, 765 (¶28) (Miss. 2000)) (internal citations and quotation marks omitted). "The balancing of equities in a nuisance case is to be done by the chancellor in accordance with established equitable principles." *Lambert v. Matthews,* 757 So. 2d 1066, 1068 (¶7) (Miss. Ct. App. 2000). "Each case is to be decided on its own facts, taking into consideration the location and the surrounding circumstances." *Id.* at 1069 (¶11) (citing *Alfred Jacobshagen Co. v. Dockery,* 243 Miss. 511, 517, 139 So. 2d 632, 634 (1962)). It is not a requirement "that the other property owners be driven from their homes, but only that their enjoyment of life and property is rendered materially uncomfortable and annoying." *Id.* (internal citation and quotation marks omitted).

¶14.    As stated above, both the Varnells and the Rogerses put on testimony regarding various incidents that had occurred, and although the Varnells made many allegations against the Rogerses, they were unable to produce any evidence linking the Rogerses to the alleged

9

acts other than perhaps evidence of a small amount of debris from fireworks on one Fourth of July. The record reflects ample evidence undergirding the chancellor's findings of fact. Moreover, it is the responsibility of the chancellor to weigh the credibility of the witnesses and balance the equities of the parties. As such, we find that the chancellor was well within her discretion to find one party's testimony more credible than the other's. Therefore, we cannot find that the chancellor abused her discretion in dismissing the Varnells' complaint and, instead, granting an injunction against the Varnells.

## II. *Damages for the Fence*

¶15. Next, the Varnells argue that the chancellor erred in awarding reimbursement damages to the Rogerses for the fence that Michael had constructed between the Rogerses' and the Varnells' properties. In support of their argument, the Varnells cite Mississippi Code Annotated section 89-13-1 (Rev. 2011), which provides:

> Persons owning adjoining land or lots, or being lessees thereof for *more than two years*, shall be bound to contribute equally to the erection of fences on the line dividing the land or lots, if the land or lots on their respective sides be used by the owner or lessee thereof for purposes of cultivation, or for horticultural purposes, or for the purpose of pasturing cattle, horses, hogs or sheep, or if a lot be used as an *inclosure for any other purpose*; and each party shall be bound to contribute equally toward keeping the party fences in good repair so long as the land or lot be so used. An owner shall not be bound to contribute to the erection of a party fence, either built or to be built, or to keeping the same in repair, who may prefer to build a fence and to *leave a lane on his land between himself and the adjoining owner*. But the failure to erect such fence for the space of sixty days shall be deemed an abandonment of the intention to do so, and a determination to adopt the fence built, and the person so failing shall then be bound to pay his proportion of the value of the party fence.

(Emphasis added).

¶16.   Although the portion of the fence that Michael constructed was along the Varnells' and the Rogerses' property line, there is no evidence that the fence was in fact a party fence within the meaning of section 89-13-1.  Therefore, the chancery court erred in requiring the Varnells to reimburse the Rogerses for the cost of the fence that the Rogerses constructed.  Accordingly, we reverse and render that portion of the judgment.

        III.     *Attorney's Fees*

¶17.   Finally, the Varnells argue that the chancellor erred in awarding attorney's fees to the Rogerses.  In support of their argument, the Varnells cite *Grisham v. Hinton*, 490 So. 2d 1201, 1205 (Miss. 1986), where the Mississippi Supreme Court stated:

> With the sole exception of punitive damages cases, in the absence of a contractual provision or statutory authority therefor, this [c]ourt has never approved awarding trial expenses and attorney['s] fees to the successful litigant.  It has consistently been our view that such expenses are not allowable as part of the costs.

In the matter currently before us, there was neither a contract between the parties nor an award of punitive damages.  In addition, the Rogerses have not cited any statutory authority as a basis for awarding the attorney's fees under the facts of this case.   Consequently, we find that this award should also be reversed and rendered.

¶18.   **THAT PORTION OF THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY DISMISSING THE APPELLANTS' COMPLAINT AND GRANTING AN INJUNCTION IN FAVOR OF THE APPELLEES IS AFFIRMED, AND THAT PORTION OF THE JUDGMENT AWARDING ATTORNEY'S FEES AND DAMAGES IN THE AMOUNTS OF $5,000 AND $1,000, RESPECTIVELY, IS REVERSED AND RENDERED.  ALL COSTS OF THIS APPEAL ARE ASSESSED**

11

**ONE-HALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEES.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**