# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-00838-SCT

*EDDIE J. BRIGGS, THE OXBOW GROUP LLC,*
*ROBERT CAMPBELL, GEORGE R. DAY, JR.,*
*JAMES N. HUNTER, ED MORGAN AND*
*CYNTHIA RUTLAND*

*v.*

*WILL HUGHES AND CHAD PENN*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/24/2019 |
| TRIAL JUDGE: | HON. JAMES CHRISTOPHER WALKER |
| TRIAL COURT ATTORNEYS: | GEORGE CAYCE NICOLS |
| | EDDIE JACOB ABDEEN |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | GEORGE CAYCE NICOLS |
| ATTORNEY FOR APPELLEES: | EDDIE JACOB ABDEEN |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 05/06/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Will Hughes and Chad Penn are commercial farmers who lease farmland in Madison County, Mississippi.  They began using propane cannons in the summer months to deter deer from eating their crops, which consist mainly of cotton and soybeans.  Because of the intentionally loud noise these devices create, neighboring property owners sought to enjoin Hughes and Penn from using the cannons.  But citing the Mississippi Right to Farm Act, the

chancellor found the neighbors' nuisance claim was barred. Under the Mississippi Right to Farm Act, nuisance actions are barred against any "agricultural operation" that has been established one year or more and is compliant with all applicable state and federal permits. Miss. Code Ann. § 95-3-29(1) (Rev. 2018). Undisputedly, Hughes's and Penn's farms had been in operation for many years before the nuisance action was filed. So the chancery court ruled Section 95-3-29(1) was an absolute defense and dismissed the neighbors' nuisance action.

¶2. On appeal, the neighboring property owners argue the chancery court misinterpreted the statute. They insist that, for an agricultural operation to enjoy the statute's protection, any new agricultural practice, such as the use of propane cannons, must be in place for at least a year. In their view, the chancery court erred by looking to how long the farms had been in operation instead of how long the practice of propane cannons had been in place. But their proposed view contradicts the statute's plain language.

¶3. The one-year time limitation in Section 95-3-29(1) does not hinge on the existence of any specific agricultural *practice*. Instead, it is expressly based on the existence of the agricultural *operation*, which "includes, *without limitation*, any facility or production site for the production and processing of crops . . . ." Miss. Code Ann. § 95-3-29(2)(a) (Rev. 2018) (emphasis added). It also includes the farm machinery, equipment, and devices used for the operation if such use is in accordance with best agricultural-management practices. *Id.* Applying the plain language in Section 95-3-29(2)(a), the properties being farmed are

2

without question agricultural operations. And the propane cannons are part of those operations, because they are part of the farms' best agricultural-management practices.

¶4. Since the *farms* had been in operation for more than one year, the chancellor was correct to apply Section 95-3-29(1)'s bar. We therefore affirm.

## Background Facts and Procedural History

¶5. The neighbors (collectively, "Briggs")[1] live or own property near the Madison County properties Hughes and Penn lease to operate their respective commercial farms. In July 2018, Briggs filed a nuisance complaint against Hughes and Penn seeking a temporary and permanent injunction against the two farmers' use of propane cannons. Both Hughes and Penn had been using the cannons during summer months to frighten deer from eating their crops. Briggs asserted the constant loud noise from the cannons disrupted the otherwise peaceful and wooded nature of the area.

¶6. On August 8, 2018, the chancery court held a temporary hearing. Following the hearing, the chancery court enjoined Hughes and Penn from using the cannons after August 14, 2018—when the court determined the growing season would end—and until a final ruling. The court entered its final ruling in January 2019, after a two-day hearing during which both parties presented testimony, including agricultural-management experts.

¶7. The court did not reach the question whether the propane cannons constituted a nuisance. Instead, the court ruled that Section 95-3-29(1) provided an absolute bar to

---

[1] The original plaintiffs were Eddie J. Briggs, The Oxbow Group LLC, Robert Campbell, George R. Day Jr., James N. Hunter, Ed Morgan, Cynthia Rutland, Joey Stroble, and Tom Wiggins.

Briggs's private nuisance action. Specifically, the court determined that Hughes's and Penn's agricultural operations had existed for more than a year before Briggs filed suit. The chancellor also found Hughes and Penn used the propane cannons as part of their agricultural operations. And he additionally determined the use of propane cannons accords with best agricultural-management practices and complies with any applicable state and federal permits.

¶8. The court dismissed Briggs's action with prejudice. And Briggs appealed.[2]

### Discussion

### I. Mississippi Right to Farm Act

¶9. Of the multiple issues Briggs raises on appeal, all but one are aimed at Mississippi Code Section 95-3-29, referred to as the Right to Farm Act.

### A. Existing Agricultural Operation

¶10. Briggs first argues the chancery court misinterpreted Section 95-3-29. Statutory interpretation is a question of law, which we review de novo. *Coleman v. State*, 947 So. 2d 878, 880 (Miss. 2006).

¶11. Specifically, Briggs claims the chancery court erred by applying Section 95-3-29 based on *any* agricultural activity's being in existence for more than a year. He instead suggests the court should have looked to how long the "activity complained of" had existed. According to Briggs, it "was not the intent of the legislature to allow new farming practices

---

[2] Joey Stroble and Tom Wiggins did not join the appeal.

4

by old farming operations to be blanketly protected from any nuisance action regardless of when the practice began."

¶12. While we certainly understand Briggs's argument and concerns, to determine legislative intent, this Court must first look to the language of the statute. *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011). "If the words of a statute are clear and unambiguous," our job is to apply the plain meaning. *Id.* And, here, the plain language makes clear the legislature in fact *did* intend to protect existing agricultural operations from nuisance actions based on use of new farming equipment, devices, chemicals, materials, and structures, if that use accords with best agricultural-management practices. Miss. Code Ann. § 95-3-29(1), (2)(a).

¶13. In 2009, the Legislature amended Section 95-3-29. S.B. 2607, Reg. Sess., 2009 Miss. Laws ch. 333. In doing so, the legislature stripped away language that—if it had been left in place—would have potentially supported Briggs's argument. Specifically, the Legislature removed the requirement that, for the one-year bar against nuisance actions to apply, "the conditions or circumstances alleged to constitute a nuisance [must] have existed substantially unchanged since the established date of operation." Miss. Code Ann. § 95-3-29(1) (Rev. 2004). Now, an existing agricultural operation is protected from a nuisance action if "the operation is in compliance with all applicable state and federal permits." Miss. Code Ann. § 95-3-29(1) (Rev. 2018).

¶14. Even though the Legislature intentionally removed the language about substantially similar conditions or circumstances, Briggs still insists that the court must look to the specific

5

"activity complained of." The problem we face is that this argument has no support from the statute's language. Section 95-3-29(1) does not apply to a specific agricultural "activity." It instead applies to an agricultural *operation*.

¶15.    In Section 95-3-29(2)(a), the Legislature defines "agricultural operation." Under the statutory definition, an agricultural operation "includes, *without limitation*, any facility or production site for the production and processing of crops . . . ." Miss. Code Ann. § 95-3-29(2)(a) (emphasis added). And, important to this appeal, it also includes the farm machinery, equipment, and devices used for the operation, if the use is a best agricultural-management practice. *Id.* Applying the plain language in Section 95-3-29(2)(a), the properties being farmed are without question agricultural operations. And the propane cannons are part of those operations because they are being used as part of the best agricultural-management practices of the farm. Since the *farms* had been in operation for more than one year, the chancellor was correct to apply Section 95-3-29(1)'s bar.

¶16.    Presiding Justice King's separate opinion insists Section 95-3-29(2)(a) is ambiguous, that is, open to more than one interpretation. The opinion rejects the above interpretation as unreasonable and impractical. Instead, the opinion advocates the we adopt Texas's interpretation of its Right to Farm Act. But Texas's statute is different than Mississippi's. Unlike our Right to Farm Act, the Texas statute still includes the substantially-unchanged-circumstances-or-conditions requirement that the Mississippi Legislature expressly got rid of. *Compare* Tex. Agric. Code Ann. § 251.004 (West, Westlaw through 2019 Reg. Sess. of 86th Leg.) *with* Miss. Code Ann. § 95-3-29(1). So any reliance on the Texas court's

6

interpretation of the Texas Right to Farm Act is misplaced. More important, Mississippi's Right to Farm Act is not ambiguous. So we must apply the plain language as written instead of delving into how practical or impractical it was for the Legislature to choose to protect agricultural operations against nuisance actions if the operations have existed for one year, comply with state and federal permits, and use best agricultural-management practices.

¶17. Presiding Justice King's hypothetical does pose an interesting question—what would happen if the cotton farms were fully converted to hog farms? But this is obviously not the question before this Court. In that scenario, application of the one-year statute of limitations would turn on whether the total conversion of a cotton farm to a hog farm should be considered a new agricultural operation or part of the existing agricultural operation. But, again, that is not what we face here.

¶18. Indeed, in this case, no one denies Hughes and Penn have been continually operating cotton and soybean farms. And the question presented here is whether the use of propane cannons constitutes a new agricultural operation in itself or whether it is simply part of the existing farm. When the plain language of Section 95-3-29 is applied, the answer to that question is clearly the latter—the propane cannons are part of the farms. They are by no means "agricultural operations" in and of themselves.

¶19. In short, under Briggs's and Presiding Justice King's view, the one-year statutory bar would restart every time an existing farm begins using a new piece of equipment. That is certainly not what the Legislature intended. While we do understand Briggs's frustrations, we have to apply the Right to Farm Act as written. Any push to change the statute must be

aimed at the Legislature. And, similarly, any rewriting of the statute must also come from the Legislature. Based on the language as written, the chancery court properly interpreted Section 95-3-29.

### B. Best Agricultural-Management Practices

¶20. Second, Briggs takes issue with the chancery court's conclusion that Hughes's and Penn's use of propane cannons accorded with best agricultural-management practices. This was a factual finding. And we "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996).

¶21. Here, the chancellor supported his conclusion with substantial evidence. Hughes and Penn presented their respective agricultural-management experts, who consulted with them about pest control. Both experts testified they recommend propane cannons to prevent deer from eating growing crops. Even Briggs's own expert testified he had used propane cannons in the past and only stopped when they became less effective over time.

¶22. On appeal, Briggs latches on to testimony from his expert and one of Hughes and Penn's experts that deer can become accustomed to the cannons. So if left in the same place, the cannons can become less effective over time. Briggs asserts that to be the "best" agricultural-management practice, it must be effective—that a widely used practice is not enough. But for a device to fall under the statutory definition of an agricultural operation, the inquiry does not turn merely on how effective the device is. Instead, the question is

whether the device is being "used in accordance with best agricultural management practices . . . ." Miss. Code Ann. § 95-3-29(2).

¶23. Here, multiple experts in agricultural management testified they have used propane cannons as part of a pest-control plan. Further, Hughes and Penn provided expert testimony that their particular cannon use was consistent with best practices. Because the chancellor supported his conclusion with substantial evidence, we will not disturb his finding that Hughes and Penn used propane cannons in accordance with best agricultural-management practices.

### C. Bar Against Nuisance Actions

¶24. Third, Briggs contends the constant noise created by the propane cannons violated Mississippi Code Section 97-35-9 (Rev. 2020), which criminalizes "wilfully disturb[ing] the peace of any family or person by an explosion of gunpowder or other explosive substance, or by loud or unusual noise, or by any tumultuous or offensive conduct . . . ." Thus, he reasons application of the Right to Farm Act here would decriminalize certain actions. A prominent problem with this argument is that neither Hughes nor Penn have been charged with violating Section 97-35-9. And while the chancery court lacks jurisdiction over criminal actions, the chancellor still pointed out there was no evidence Hughes and Penn intended to "wilfully disturb[]" their neighbors. The sole claim before the chancellor was Briggs's private nuisance action. Thus, we find no error in the chancery court's applying the Right to Farm Act to dismiss Briggs's claim.

9

¶25. Briggs alternatively suggests the chancery court could have granted him other equitable relief. But the nuisance case he cites, ***Lambert v. Matthews***, 757 So. 2d 1066 (Miss. Ct. App. 2000), did not involve application of the Right to Farm Act. Yet the case before us does. And the chancellor rightly acknowledged that Hughes and Penn's "proof that the[ir] agricultural operation[s] . . . ha[ve] existed for one (1) year or more is an absolute defense to [Briggs's] nuisance action . . . ." Miss. Code Ann. § 95-3-29(1).

### D. Constitutionality

¶26. Fourth, Briggs asserts that chancery court's interpretation of the Mississippi's Right to Farm Act violates his right to due process under the United States and Mississippi Constitutions.[3] U.S. Const. amend V, XIV; Miss. Const. art. 3, § 14. But, as discussed above, the chancellor's interpretation is consistent with the statute's plain language. So what Briggs is really challenging is the Right to Farm Act itself and the Legislature's decision to remove the substantially-similar-conditions-and-circumstances requirement.

¶27. Mississippi Rule of Civil Procedure 24(d) contains built-in notice requirements for constitutional challenges: "[T]he party asserting the unconstitutionality of the statute shall notify the Attorney General of the State of Mississippi within such time as to afford him [or her] an opportunity to intervene and argue the question of constitutionality." Similarly, under Mississippi Rule of Appellate Procedure 44(a), "[i]f the validity of any statute . . . is raised in the Supreme Court or the Court of Appeals, and the state . . . is not a party to the proceeding, the party raising such question shall serve a copy of its brief, which shall clearly

---

[3] Specifically, he argues his not being able to enjoin the use of the propane cannons decreases his property value, thus constituting a taking a property without due process of law.

10

set out the question raised, on the Attorney General." Here, neither notice rule was met. So Briggs cannot challenge the constitutionality of Section 95-3-29. *Oktibbeha Cnty. Hosp. v. Miss. State Dep't of Health*, 956 So. 2d 207, 210-11 (Miss. 2007).

## II.        Mississippi Rule of Civil Procedure 26

¶28.    Finally, Briggs raises a procedural issue. He argues the chancery court improperly allowed Hughes and Penn's experts to testify. He suggests their expert designations did not comply Mississippi Rule of Civil Procedure 26.

¶29.    Under Rule 26, a party must provide the opposing party, if it so requests, "the name of each expert witness it plans to call at trial along with 'the subject matter on which the expert is expected to testify, . . . the substance of the facts and opinions to which the expert is expected to testify[,] and a summary of the grounds for each opinion.'" *Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986, 997 (Miss. 2012) (quoting Miss. R. Civ. P. 26(b)(4)(A)(i)). Briggs asserts Hughes and Penn "merely submitted the names of the experts" and thus failed to comply with the rule. But what Briggs misses is that Hughes and Penn incorporated their experts' affidavits by reference. These affidavits contained the experts' qualifications, the fact they had been Hughes's and Penn's respective crop consultants, and the basis of their opinion that Hughes's and Penn's use of propane cannons constituted best agricultural-management practice.

¶30.    "[T]he admission of expert testimony is within the sound discretion of the trial judge." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003). And Briggs has not shown the chancery court abused its discretion. Particularly, Briggs fails to show how

11

responding to his discovery request about expert testimony by incorporating the affidavit by reference prejudiced his ability to prepare for trial. Briggs does not claim he lacked access to the substance of the expert opinions. Nor does he suggest he was somehow hampered in his ability to meet their testimony at trial.

¶31. Thus, after review, we find the chancellor did not abuse his discretion by admitting the expert testimony.

¶32. **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶33. Because I would find that the trial court erred by holding that the right-to-farm act bars nuisance suits against agricultural operations one year after the commencement of the overall farming operation, I respectfully disagree. I instead would find that the specific agricultural operation at issue determines the applicability of the one-year defense. However, because the farmers in this case had been utilizing the propane cannons for more than one year before the nuisance action was filed, I agree that the trial court correctly dismissed Plaintiffs' nuisance action and request for permanent injunction.

¶34. "The interpretation of a statute is a question of law, and the standard of review on appeal is de novo." *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 449 (Miss. 2019) (citing *Natchez Hosp. Co. LLC v. Adams Cnty. Bd. of Supervisors*, 238 So. 3d 1162, 1163 (Miss. 2018)). Mississippi Code Section 95-3-29 states that in a nuisance

action against an agricultural operation, "proof that the agricultural operation . . . has existed for one (1) year or more is an absolute defense to the nuisance action, if the operation is in compliance with all applicable state and federal permits." Miss. Code Ann. § 95-3-29(1) (Rev. 2018). The statute defines "agricultural operation" as follows:

> (a) "Agricultural operation" includes, without limitation, any facility or production site for the production and processing of crops, or products thereof . . . . "Agricultural operation" also includes the use of farm machinery, equipment, devices, chemicals, products for agricultural use, materials and structures designed for agricultural use and used in accordance with best agricultural management practices and are in compliance with any applicable state and federal permits.

Miss. Code Ann. § 95-3-29(2)(a) (Rev. 2018). Therefore, "agricultural operation" includes the use of farm equipment and devices. I would find that, pursuant to Section 95-3-29, this Court must look to the specific agricultural operation at issue, in this case the propane cannons, as opposed to the overall farming operation, to determine whether the one-year defense is applicable.

¶35. As Briggs argues, interpreting the act to grant blanket immunity for any activity, regardless of its effect, performed by an overall farm in existence for more than one year is an impracticable approach. In my opinion, the statute is not intended to protect any and all agricultural activities or operations a farmer may choose to utilize simply because a farm in general had existed for more than one year.

¶36. Other jurisdictions have interpreted their own right-to-farm acts similarly. The Supreme Court of Texas has concluded that the defense under its right to farm act "was intended to bar a nuisance action against a lawful agricultural operation one year *after the*

13

*commencement of the conditions or circumstances constituting the basis for the nuisance action.*" **Holubec v. Brandenberger**, 111 S.W.3d 32, 38 (Tex. 2003) (emphasis added); *see also* **Buchanan v. Simplot Feeders Ltd. P'ship**, 952 P.2d 610, 614 ("[A]n established farm may not be able to institute a new or radically expanded 'activity' and maintain nuisance immunity, because the language of the statute focuses on agricultural *activity* that has been established prior to the urban encroachment."); **Payne v. Skaar**, 900 P.2d 1352, 1355 (Idaho 1995) ("Under Skaar's interpretation, any properly managed agricultural operation more than a year old, which was not a nuisance when the operation began, could thereafter expand without hindrance, and would be absolutely immune from a nuisance claim. The [right-to-farm act] compels no such interpretation.").

¶37.   The majority finds probative that the Legislature excluded the "substantially unchanged" language in 2009. S.B. 2607, Reg. Sess., 2009 Miss. Laws ch. 333. Yet the statute's language that "proof that the agricultural operation . . . has existed for one (1) year or more is an absolute defense to the nuisance action" can reasonably be interpreted to mean the specific agricultural operation at issue as defined by the statute. Miss. Code Ann. § 95-3-29(1). That interpretation was not defeated by the exclusion of the "substantially unchanged" language.  Thus, I would find that the intention of the one-year provision in the statute is to determine whether the equipment or devices had existed for one year or more in order to be considered a defense to nuisance actions.

¶38.   The majority contends that any change to the statue must come from the Legislature and not this Court. The majority ignores that this Court's duty is to "carefully review

14

statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case." *Hall v. State*, 241 So. 3d 629, 631 (Miss. 2018) (internal quotation mark omitted) (quoting *Corp. Mgmt., Inc. v. Greene Cnty.*, 23 So. 3d 454, 465 (Miss. 2009)). As we have previously stated,

> It is familiar learning that, in the construction of statutes, courts chiefly desire to reach and know the real intention of the framers of the law, and, reaching and knowing it, then to adopt that interpretation which will meet the real meaning of the legislature, though such interpretation may be beyond or within, wider or narrower than, the mere letter of the enactment.

*State Bd. of Educ. v. Mobile & O.R. Co.*, 72 Miss. 236, 16 So. 489, 489 (1895). Because the statute at issue is ambiguous, this Court must determine the statute's most reasonable interpretation. The majority's interpretation is not that. Under the majority's interpretation, a five-hundred acre cotton farm, which had operated for ten years, could in year eleven convert to a five-hundred acre hog farm, leaving its neighbors with absolutely no recourse. That interpretation is simply not the most logical interpretation of the right-to-farm statute.

¶39. I would find that the statute grants an absolute defense to nuisance actions if the specific agricultural operation at issue has been in existence for one year or more. Accordingly, I would find that the trial court erred by determining that the onset of the overall farming operation began the one-year defense. But because the farmers in this case had been utilizing the propane cannons for more than one year before the nuisance action was filed, the trial court correctly dismissed the case, and I would affirm.

**KITCHENS, P.J., JOINS THIS OPINION.**

15